Lloyd L. HANSON and Valora J. Hanson, Administrators of the Estate of Dennis L. Hanson, Deceased, Appellants,

v.

Sherman REICHELT, Employer, and Farm Bureau Mutual Insurance Company, Insurance Carrier, Appellees.

No. 88–1808.

Supreme Court of Iowa.

Feb. 21, 1990.

Reconsideration Denied March 21, 1990.

Nathan B. Updegraff and Steven J. Holwerda of Selby, Updegraff, Smith & Holwerda, Newton, for appellants.

E.J. Giovannetti and Valerie A. Fandel of Hopkins & Huebner, P.C., Des Moines, for appellees.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL and ANDREASEN, JJ.

LAVORATO, Justice.

This appeal arises out of the death of a farm employee who suffered a heatstroke while working. The Iowa industrial commissioner denied benefits, finding that the employee's injury did not arise out of his employment. In making this finding, the commissioner applied the general public-increased risk rule, a rule this court first approved in a workers' compensation case involving heatstroke more than fifty years ago.

The district court affirmed the commissioner's decision. The administrators of the deceased employee's estate appealed; we transferred the case to the court of appeals. The court of appeals reversed and remanded the case to the agency on an issue the agency had not addressed. The employer and carrier filed an application for further review, which we granted.

We now adopt the actual risk rule in workers' compensation cases involving injuries from exposure to the elements. We think here, however, that the agency should be allowed to decide the liability issue in light of the rule we adopt today. So we affirm in part and vacate in part the decision of the court of appeals. We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

On June 24, 1983, D. Van Maanen agreed to buy some hay from Sherman Reichelt. Reichelt had already baled some of the hay. The remainder of the hay sold to Van Maanen had to be baled, and all of the hay had to be stacked on a hayrack and transported from Riechelt's field.

Reichelt hired Dennis L. Hanson to help with the baling. When the baling operation began, the weather was very hot; the recorded temperature that day reached a high of 95 degrees.

At about 2:30 p.m. on June 24, Van Maanen's wife, Van Maanen, Reichelt, and Hanson began working in the field. Hanson's job was twofold: he stacked bales and drove empty and full hayracks to and from the field. Each bale weighed about sixty pounds. Hanson did this for about an hour and a half. But at no time did he work more than twenty-five minutes without a break.

At some point Hanson quit and sat down in the field. About thirty minutes later, Reichelt drove up in his pickup and found Hanson passed out.

Reichelt called for medical assistance; an ambulance arrived about 5:00 p.m. and took Hanson to a hospital in Newton. The doctors there determined that Hanson had suffered a heatstroke. Later Hanson was transferred to Iowa Methodist Medical Center in Des Moines where he underwent extensive treatment and finally died on July 18, 1983.

Hanson's father and mother were appointed administrators of their son's estate. As such the parents filed a petition with the Iowa Industrial Commission in June 1984. *See* Iowa Code § 85.26(4) (1983). They sought medical and death benefits from Reichelt and Reichelt's insurance carrier.

A deputy industrial commissioner in an arbitration decision found that Hanson's death did not arise out of his employment and denied benefits. The administrators appealed to the commissioner who affirmed. *See* Iowa Code § 86.24.

The administrators then filed in the district court a petition for judicial review of the commissioner's decision. The district court affirmed.

The administrators appealed from the district court's decision, and we transferred the case to the court of appeals. The court of appeals found that Hanson's death did arise out of his employment. So it reversed the judgment of the district court.

The court of appeals remanded the case to the agency for findings on an issue the agency had not addressed. That issue was whether medical services rendered following Hanson's cardiac arrest were reasonably necessary. The employer and carrier contended before the agency that Hanson was "brain dead" following the cardiac arrest. So, they argued, continued treatment after that was not necessary and therefore not compensable under Iowa Code section 85.27.

Reichelt and his carrier sought further review of the court of appeals decision, which we granted. The narrow issue we must decide is whether the agency properly applied the law when it found that Hanson's death did not arise out of his employment.

I. When we review a district court decision on the validity of agency action, we ask only whether the district court has correctly applied the law. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987). The district court is itself acting in an appellate capacity to correct errors of law made by the agency. *Id.* In our review of the district court's action in such capacity, we merely apply the standards of Iowa Code section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. *Id.* If our conclusions are the same, we must affirm. *Id.* Likewise, if our conclusions differ, we must reverse.

II. In these proceedings the administrators had the burden to prove by a preponderance of the evidence that Hanson had suffered an injury that arose out of and in the course of his employment. *McDowell v. Town of Clarksville*, 241 N.W.2d 904, 907–08 (Iowa 1976). In the context of workers' compensation law, the concept of proximate cause is found in the words "out of." *Crowe v. De Soto Consol. School Dist.*, 246 Iowa 402, 406, 68 N.W.2d 63, 65 (1955).

The words "in the course of" simply refer to the time, place, and circumstances of the injury. *Id.* So an injury occurs in the course of employment when it happens within the period of employment at a place the employee may reasonably be, and while the employee is doing work or something incidental to it. *Cedar Rapids Communi-*

*ty School Dist. v. Cady,* 278 N.W.2d 298, 299 (Iowa 1979).

Both sides agree that Hanson's injury—the heatstroke—arose during the course of his employment. So, as we said, our sole issue is whether Hanson's injury arose out of his employment.

■ III. In the past this court addressed the issue whether a heatstroke is compensable in workers' compensation cases. *See, e.g., Wax v. Des Moines Asphalt Paving Corp.,* 220 Iowa 864, 263 N.W. 333 (1935); *West v. Phillips,* 227 Iowa 612, 288 N.W. 625 (1939). In *Wax* an employee suffered a heatstroke while digging a trench in 100+ degree temperatures. The industrial commissioner allowed benefits, and the district court affirmed. Viewing the same facts, we held as a matter of law that the heatstroke did not arise out of the employment. In other words, there was no causal connection between the employment and the injury. *Wax,* 220 Iowa at 865–67, 263 N.W. at 334–35.

In reaching this conclusion, we adopted and applied the general public-increased risk rule which provides that

[i]f the employment brings with it no greater exposure to injurious results from natural causes, and neither contributes to produce these nor to aggravate their effect, as from lightning, severe heat or cold, than those to which persons generally in that locality, whether so employed or not, are equally exposed there is no causal connection between the employment and the injury. But where the employment brings a greater exposure and injury results, the injury does arise out of the employment.

*Id.* at 865–66, 288 N.W. at 334. Simply put, the rule permits recovery "only in cases where the [employee] is exposed to conditions of temperature unusual or more intense than those experienced by [employees] of the community in general." *Id.* at 866, 288 N.W. at 334.

Relying on the same rule, we reached an opposite result in *West v. Phillips.* There a bakery employee became ill while working the night shift. The employee died the next day. His doctor testified that the employee showed substantially all the symptoms of heat exhaustion. The doctor performed an autopsy. He found that the employee had severe heart trouble and that the heat exhaustion had hastened the employee's death. *West,* 227 Iowa at 614, 620, 288 N.W. at 629.

In *West* experts testified that heat infiltration from the tar roof, an inefficient fan inside, and artificial heat from the oven combined to make it 10 to 12 degrees hotter inside. During the day, the temperatures outside had reached 108. *Id.* at 617–18, 288 N.W. at 627–28.

We thought that the testimony of the experts was sufficient to sustain a finding "that there was excessive heat in the bakeshop caused by artificial heat." *Id.* at 618, 288 N.W. at 628. Such a finding, of course, met the recovery requirement of the general public-increased risk rule: the employee must be exposed to conditions of temperature unusual or more intense than those experienced by employees of the community in general. In addition, we thought the doctor's testimony was sufficient to establish the necessary causal connection between the employee's death and the heat exhaustion. *Id.*

The facts here are on all fours with the facts in *Wax.* So it is not surprising that the deputy reached the same conclusion as we did in *Wax:* no causal connection between the death and the injury.

One noted authority criticizes the general public-increased risk rule because of the way courts define the general public:

The heart of the difficulty is almost entirely in defining the general public with which the comparison is made. It is here that many of the negative cases have gone wide of the mark. Clearly, since the object of the comparison between the exposure of this employee and the exposure of the public is to isolate and identify the distinctive characteristics of this employment, the comparison should be made with a broad cross section of the public having no characteristics specially selected because they re-

semble those of the employment. Because most of these cases arise during extreme hot, cold, rainy, or stormy weather, the most direct way to approach a working rule is to ask: What does the average man, free of the obligation of any particular employment, do when it is twenty below, or a hundred in the shade, or raining, sleeting or snowing violently? There may be various answers as to what he does, but there is one clear answer as to what he does *not* do. He does not stay outdoors all day.

1 Larson, *Workmen's Compensation Law,* § 8.42 (1984).

Larson gives an example of the proper application of the general public-increased risk rule from a Texas sunstroke case in which the court succinctly and clearly summed up the rule:

> In the case before us the very work which the decedent was doing for his employer exposed him to a greater hazard from heatstroke than the general public was exposed to for the simple reason that the general public were not pushing wheelbarrow loads of sand in the hot sun on that day.

*Id.* (quoting from *American Gen. Ins. Co. v. Webster,* —— Tex.Civ.App. ——, ——, 118 S.W.2d 1082, 1085–86 (1938)).

Several jurisdictions have discarded the general public-increased risk rule in cases involving effects of exposure to the elements. In its place, these courts have adopted the actual risk rule. *See, e.g., Hughes v. St. Patrick's Cathedral,* 245 N.Y. 201, 156 N.E. 665 (1927); *Eagle River Bldg. & Supply Co. v. Peck,* 199 Wis. 192, 225 N.W. 690 (1929); 1 Larson at 8.43.

In *Hughes,* the employee suffered heat prostration while working outdoors. In holding for the employee, the court summed up the actual risk rule in two sentences:

> Heat prostration is an accidental injury arising out of and during the course of the employment, if the nature of the employment exposes the workman to risk of such injury. Although the risk may be common to all who are exposed to the suns rays on a hot day, the ques-

tion is whether the employment exposes the employee to the risk.

245 N.Y. at 202–03, 156 N.E. at 665.

Reaching the same result on similar reasoning in an accidental freezing case, the Wisconsin Supreme Court said:

> The injury in the instant case clearly grew out of and was incidental to the employment. It makes no difference that the exposure was common to all out of door employments in that locality in that kind of weather. The injury grew out of that employment and was incidental to it. It was a hazard of the industry.

*Eagle River Bldg. & Supply Co.,* 199 Wis. at 196, 225 N.W. at 691.

We think the actual risk rule is the better rule and more in line with how we construe our Workers' Compensation Act. We construe the Act liberally in favor of the employee; we resolve all doubts in favor of the employee. *Teel v. McCord,* 394 N.W.2d 405, 406–07 (Iowa 1986).

Moreover, the actual risk rule makes no comparison between risks found by the employee and those found by the general public. So the rule is not subject to the same criticisms that have been voiced against the general public-increased risk rule.

We adopt the actual risk rule in cases involving injuries from exposure to the elements. If the nature of the employment exposes the employee to the risk of such an injury, the employee suffers an accidental injury arising out of and during the course of the employment. And it makes no difference that the risk was common to the general public on the day of the injury.

■ IV. Because the district court's judgment is based on a rule of law we now renounce, we must reverse. But we think the agency should be allowed to decide the liability issue in light of the actual risk rule. So we affirm that part of the court of appeals decision which reversed the judgment of the district court. We vacate that part of the court of appeals decision which held that Hanson's injury arose out of his employment. We reverse the judgment of the district court and remand for

further proceedings consistent with this opinion.

DECISION OF COURT OF APPEALS AFFIRMED IN PART AND. VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED.