# IN THE SUPREME COURT OF IOWA

No. 15 / 03-1221

Filed November 9, 2007

**LAKESIDE CASINO** and
**ZURICH-AMERICAN INSURANCE GROUP**,

      Appellees,

vs.

**DANA BLUE**,

      Appellant.

---

Appeal from the Iowa District Court for Clarke County, William H. Joy, Judge.

Injured worker appeals district court judgment on judicial review reversing Workers' Compensation Commissioner's award of workers' compensation benefits. **REVERSED AND REMANDED.**

Max J. Schott of Max Schott & Associates, P.C., Des Moines, for appellant.

Donna R. Miller and Nicholas J. Mauro of Grefe & Sidney, P.L.C., Des Moines, for appellees.

**TERNUS, Chief Justice.**

The appellant, Dana Blue, injured her foot when she stumbled on her employer's stairs as she returned to work from a break. The Workers' Compensation Commissioner awarded benefits to Blue for her injury, concluding her work subjected her to the inherently dangerous activity of traversing stairs. On judicial review, the district court rejected the Commissioner's conclusion that stairs are inherently dangerous and reversed the award of benefits, stating Blue's injury coincidentally occurred at work and was not compensable. Blue has appealed this decision. Upon our consideration of the parties' arguments, we reverse the decision of the district court and remand this case for entry of a judgment affirming the Workers' Compensation Commissioner's award of benefits.

## I. Background Facts and Proceedings.

The facts surrounding the occurrence of Blue's injury are largely undisputed. At the time of her injury, Blue was employed as a cocktail server by appellee, Lakeside Casino. On December 31, 2000, she became light-headed and nauseated while on duty and was directed by her supervisor to go to the employee's lounge until she felt better. After spending approximately forty-five minutes in the lounge, Blue's symptoms disappeared, and she felt well enough to return to work. Blue left the lounge with several of her coworkers, walked forty feet to a set of stairs, and descended the stairs with no problem. Still conversing with her coworkers, she turned a corner and began walking down a second set of stairs. As she descended the steps, Blue stumbled and grabbed onto a coworker so as not to fall down the stairs. Although she immediately felt a pain in her ankle, Blue continued to the bottom of the staircase without incident. She later denied any light-headedness or nausea at the time of this incident.

Within the next couple of days, Blue's ankle became painful and swollen, and she could not walk without limping. Despite treatment, Blue continues to have pain in her ankle. She has been diagnosed with possible early complex regional pain syndrome, and her physicians have related this condition to the staircase incident.

Blue sought workers' compensation benefits from her employer and its insurer, appellee Zurich-American Insurance Group. A deputy workers' compensation commissioner presided over the hearing on her claim and determined Blue's ankle problems arose out of and in the course of her employment at Lakeside Casino. Acknowledging there must be "a causal relationship between the employment and the injury" to satisfy the "arising out of" requirement for compensability, the deputy relied on two Iowa Supreme Court cases that stated this requirement was satisfied if "the nature of the employment exposes the employee to risk of such an injury" or if the injury is a "rational consequence of the hazard connected with the employment." *See Hanson v. Reichelt*, 452 N.W.2d 164, 168 (Iowa 1990); *Burt v. John Deere Waterloo Tractor Works*, 247 Iowa 691, 700, 73 N.W.2d 732, 737 (1955). The deputy concluded: "Stairs are inherently more dangerous than a flat, smooth, unobstructed walking surface. A stumble while descending stairs in the course of employment can, as here, cause injury arising out of that employment."

On appeal to the Workers' Compensation Commissioner, the Commissioner affirmed and adopted the deputy's decision as the final agency action, supplementing that decision with some additional analysis. The Commissioner stated:

> When injured, [Blue] was on duty and on the employer's premises. Her employment compelled her to traverse those stairs. Accordingly, any injury she sustained as a result of traversing the stairs arose out of and in the course of her

employment unless something in the evidence establishes otherwise.

The Commissioner then reviewed the evidence and concluded Blue had no health impairment that caused her to trip, and therefore, her stumble was not idiopathic. He further observed there was no evidence of "[a] defect in the stairs or other hazardous condition that caused her to trip, beyond the hazard inherent in stairs." The Commissioner found Blue "simply stumbled, perhaps through her own negligence by not being sufficiently careful while traversing the stairs." Noting "traversing stairs [is] an inherently hazardous activity," the Commissioner ruled Blue's injury was compensable:

> [T]he injury occurred from the hazard of traversing stairs and the trauma of stumbling on those stairs while [Blue] was on the employer's premises and performing actions necessary for her to perform in order to perform the duties of her job. Her injury is compensable.

The employer and insurer sought judicial review. The district court reversed the Commissioner's decision, rejecting his "legal conclusion" that stairs are inherently dangerous. The court then applied the actual-risk doctrine and determined Blue's injury did not arise out of her employment. The district court reasoned:

> In this case there is no indication that the design of the stairs, condition of the stairs or the lighting of the stairs contributed to Blue's injury. Nor is there any indication that the conditions of Blue's employment exposed her to a hazard not generally associated with traversing stairs (for instance, she was not asked to or required to carry large, heavy, or awkward objects while traversing the stairs). Blue's injury "coincidentally occurred while at work" and therefore did not arise out of work.

Blue has appealed the district court's judicial review decision.

**II.  Scope of Review.**

Our review is governed by Iowa Code chapter 17A.  *See Wal-Mart Stores, Inc. v. Caselman*, 657 N.W.2d 493, 498 (Iowa 2003).  We apply the standards of section 17A.19(10) to the Commissioner's decision and decide whether the district court correctly applied the law in exercising its judicial review function.  *Herrera v. IBP, Inc.*, 633 N.W.2d 284, 286–87 (Iowa 2001).

In determining the proper standard of review, we must first identify the nature of the claimed basis for reversal of the Commissioner's decision. Here, the employer asserted the Commissioner incorrectly held the employee's injury arose out of her employment.  This issue "presents a mixed question of law and fact."  *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006).  The factual aspect of this decision requires the Commissioner to determine "the operative events that [gave] rise to the injury."  *Id.*  Once the facts are determined, a legal question remains:  "[W]hether the facts, as determined, support a conclusion that the injury 'arose out of . . . [the] employment,' under our workers' compensation statute."  *Id.* (quoting *Hawk v. Jim Hawk Chevrolet-Buick, Inc.*, 282 N.W.2d 84, 87 (Iowa 1979)).

In the case before us, there is no dispute as to the facts.  Rather, the dispute centers on the Commissioner's application of the law to the facts. This aspect of the Commissioner's decision-making process "can be affected by [various] grounds of error such as erroneous interpretation of law; irrational reasoning; failure to consider relevant facts; or irrational, illogical, or wholly unjustifiable application of law to the facts."  *Id.* (citing Iowa Code § 17A.19(10)(*c*), (*i*), (*j*), (*m*) (2001)).

Based on the arguments made in the petition for judicial review and the district court's discussion of the issues in its decision, we conclude our review is governed by section 17A.19(10)(*c*), (*m*):

The court shall reverse, modify, or grant other appropriate relief from agency action . . . if it determines that substantial rights of the person seeking judicial relief have been prejudiced because the agency action is any of the following:

. . . .

*c.* Based upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency.

. . . .

*m.* Based upon an irrational, illogical, or wholly unjustifiable application of law to fact that has clearly been vested by a provision of law in the discretion of the agency.

Iowa Code § 17A.19(10)(*c*), (*m*) (2005). "The interpretation of workers' compensation statutes and related case law has not been clearly vested by a provision of law in the discretion of the agency." *Finch v. Schneider Specialized Carriers, Inc.*, 700 N.W.2d 328, 330 (Iowa 2005). Therefore, we give the Commissioner's interpretation of the law no deference and are free to substitute our own judgment. *Id.* On the other hand, application of the workers' compensation law to the facts as found by the Commissioner is clearly vested in the Commissioner. *See Mycogen Seeds v. Sands*, 686 N.W.2d 457, 465 (Iowa 2004). Therefore, we may reverse the Commissioner's application of the law to the facts only if it is "irrational, illogical, or wholly unjustifiable." *Finch*, 700 N.W.2d at 331.

**III. Test For "Arising Out Of."**

**A. Governing Principles.** In order for an injury to be compensable in Iowa, there must be "a connection between the injury and the work." *Meyer*, 710 N.W.2d at 221. That connection is established by showing the injury arose out of and in the course of the worker's employment. Iowa Code § 85.31(1) (2001); *Meyer*, 710 N.W.2d at 220. In this case, the employer does not dispute that Blue's stumble on the stairs occurred in the course of her employment, but it does contest the Commissioner's determination that Blue's injury arose out of her employment. Not only do

the parties disagree whether Blue has carried her burden to prove her injury arose out of her employment, the parties disagree on the proper test under which this element is to be determined. Consequently, we begin our analysis with a discussion of the legal standard that should be employed to determine whether an injury arises out of the worker's employment.

As this court has noted in prior cases, "[i]njuries that occur in the course of employment or on the employer's premises do not necessarily arise out of that employment." *Miedema v. Dial Corp.*, 551 N.W.2d 309, 311 (Iowa 1996). "The two tests are separate and distinct and both must be satisfied in order for an injury to be deemed compensable." *Id.* It is important, therefore, to understand the "in the course of" test before we address the "arising out of" test.

The element of "in the course of" refers "to the time, place, and circumstances of the injury." *Id.* To satisfy this requirement, the injury must take place " 'within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto.' " *Meyer*, 710 N.W.2d at 222 (quoting 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* ch. 12, scope, at 12-1 (2005)).[1]

---

[1]In *Meade v. Ries*, 642 N.W.2d 237 (Iowa 2002), we stated that the "arising out of" requirement is satisfied when the incident that caused the injury " 'occurr[ed] while the employee [was] engaged in some activity or duty which [the employee was] authorized to undertake, and which [was] calculated to further, indirectly or directly, the employer's business.' " *Meade*, 642 N.W.2d at 245 (quoting 82 Am. Jur. 2d *Workers' Compensation* § 265, at 261-62 (1992)). This statement seems indistinguishable from the test for the "in the course of" element of causation, as set forth in *Meyer*. For this reason, we reject the Am. Jur. 2d test as an appropriate definition of the "arising out of" element under Iowa law, disavow any contrary statements in our prior cases, and do not employ the Am. Jur. 2d test in determining whether Blue's injury arose out of her employment by Lakeside Casino. (We note the most recent edition of Am. Jur. 2d has omitted the statement quoted in *Meade* from its discussion of the meaning of the phrase "arising out of." *See* 82 Am. Jur. 2d *Workers' Compensation* § 239, at 228–29 (2003)).

The element of "arising out of" requires proof "that a causal connection exists between the conditions of [the] employment and the injury." *Miedema*, 551 N.W.2d at 311. "In other words, the injury must not have coincidentally occurred while at work, but must in some way be caused by or related to the working environment or the conditions of [the] employment." *Id.*; *accord McIlravy v. N. River Ins. Co.*, 653 N.W.2d 323, 331 (Iowa 2002) (stating injury "must be related to the working environment or the conditions of employment"); *Griffith v. Norwood White Coal Co.*, 229 Iowa 496, 502, 294 N.W. 741, 744 (1940) (stating "injury arises out of the employment if it can reasonably be said to result from a hazard of the employment"). In *Hanson*, this court adopted the actual-risk rule:

> If the nature of the employment exposes the employee to the risk of such an injury, the employee suffers an accidental injury arising out of and during the course of the employment. And it makes no difference that the risk was common to the general public on the day of the injury.

452 N.W.2d at 168. Consequently, with limited exceptions,[2] we have abandoned any requirement that the employment subject the employee to a

---

[2]A claimant seeking compensation for a nontraumatic mental injury caused only by mental stimuli must prove "that the mental injury 'was caused by workplace stress of greater magnitude than the day-to-day mental stresses experienced by other workers employed in the same or similar jobs,' regardless of their employer." *Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 857 (Iowa 1995) (quoting *Graves v. Utah Power & Light Co.*, 713 P.2d 187, 193 (Wyo. 1986), *superseded by statute*, Wyo. Stat. Ann. § 27-14-102(a)(xi)(J) (Cum. Supp. 1996)). When workers' compensation benefits are sought for an employee's heart attack, the legal causation required to establish the injury arose out of the employment can be shown in three different ways:

> (1) heavy exertions ordinarily required by the job are superimposed on a defective heart, aggravating or accelerating the previous condition; (2) unusually strenuous employment exertion is superimposed on a preexisting diseased condition; or (3) damage results from continued exertion required by the employment after the onset of the heart attack symptoms.

*Wilson v. Good Will Publishers*, 671 N.W.2d 479, 480-81 (Iowa 2003), *abrogated on other grounds by P.D.S.I. v. Peterson*, 685 N.W.2d 627, 635 (Iowa 2004).

risk or hazard that is greater than that faced by the general public.[3] *Floyd v. Quaker Oats*, 646 N.W.2d 105, 108 (Iowa 2002) (stating requirement of increased hazard or exertion only applies to claims of heart attack and mental illness).

Applying these principles, this court has held the following injuries were not compensable or, in the penalty-benefits/bad-faith context, arguably not compensable, because they did not arise out of the employee's employment: (1) a knee injury that occurred as the employee was walking across a level floor, *McIlravy*, 653 N.W.2d at 331[4]; (2) a neck injury that happened when the employee straightened up after bending over to sign an invoice, *Gilbert v. USF Holland, Inc.*, 637 N.W.2d 194, 200 (Iowa 2001)[5]; (3) a

---

[3]As the claimant points out in her brief, this court commented in *Miedema* on the absence of any evidence that the employment in that case exposed the claimant to an *increased* hazard or risk. *Miedema*, 551 N.W.2d at 311. These observations were merely incidental to the primary holding in that case that the claimant had failed to prove a causal connection between his back injury and a hazard or condition of his employment. *Id.* We disavow any intent in *Miedema* to retreat from our decision in *Hanson* to reject the increased-risk rule in favor of the actual-risk rule.

[4]This case presented a bad-faith claim brought by a workers' compensation claimant against the workers' compensation insurer, claiming the insurer had had no reasonable basis to deny his claim for workers' compensation benefits. *McIlravy*, 653 N.W.2d at 326-27. The initial information available to the insurer was that the claimant's knee popped as he was walking across a level cement floor. *Id.* at 326. A later doctor's report stated that claimant's work made him more susceptible to the occurrence of such an injury. *Id.* at 327. We held the information initially available to the insurer gave the insurer a reasonable basis to deny the claim. *Id.* at 331. Based on this limited information, there was no evidence the injury was "related to the working environment or the conditions of employment." *Id.*

[5]This workers' compensation case included a claim for penalty benefits. *Gilbert*, 637 N.W.2d at 195. There was evidence to support a finding that the claimant was injured when his neck popped as he straightened up after signing an invoice, but there was also evidence that he was injured when he tugged on a stuck dock plate. *Id.* at 195-96. Although the Commissioner ultimately determined the injury occurred when the claimant pulled on the dock plate, we held the claimant's claim was fairly debatable. *Id.* at 197, 201. We held the claimant's initial explanation of his injury—that it occurred as he "straightened up after signing some work documents"—provided a basis for the employer to dispute whether the injury arose out of the claimant's employment. *Id.* at 199–200. We noted that if the injury had occurred in this manner, it "would arguably be coincidental to work and would not necessarily be related to the conditions of employment." *Id.* at 200.

back injury that occurred when an employee twisted to flush the toilet, *Miedema*, 551 N.W.2d at 312; and (4) a back injury that occurred when the employee was leaning against a wall for balance while putting on an overshoe, *Musselman v. Cent. Tel. Co.*, 261 Iowa 352, 361, 154 N.W.2d 128, 133 (1967). We concluded or suggested there was nothing in the conditions of the work environment that caused or was related to the employees' injuries. *See McIlravy*, 653 N.W.2d at 331; *Gilbert*, 637 N.W.2d at 200; *Miedema*, 551 N.W.2d at 311; *Musselman*, 261 Iowa at 359–60, 154 N.W.2d at 132.

In contrast to these decisions, we have held the following injuries did arise out of the employee's employment: (1) death of an employee caused by a deranged co-employee, *Cedar Rapids Cmty. Sch. v. Cady*, 278 N.W.2d 298, 302 (Iowa 1979); and (2) a head injury that occurred when a mining employee riding a "man trip" struck his head on a beam in the roof of the mine shaft, *Griffith*, 229 Iowa at 502, 294 N.W. at 744. In both cases, we concluded the injuries were causally connected to a hazard of the employment. *Cady*, 278 N.W.2d at 302–03; *Griffith*, 229 Iowa at 502, 294 N.W. at 744. In a third case, this court held an injury occurring when a teacher slipped on ice while checking on the condition of the highway prior to the students leaving school was compensable without any specific discussion of the "arising out of" requirement other than a statement of the basic definition. *See Crowe v. De Soto Consol. Sch. Dist.*, 246 Iowa 402, 410, 68 N.W.2d 63, 67–68 (1955).

**B. Commissioner's Interpretation of the Governing Legal Principles.** With this background, we now turn to the Commissioner's decision and his discussion of the applicable law. As noted above, the Commissioner adopted the deputy's proposed decision, but added some

additional analysis of his own. We will separately consider both bases of the Commissioner's decision.

The deputy concluded in his proposed decision that the claimant had to establish a causal connection between her injury and a condition, risk, or hazard of her employment in order to prove her injury arose out of her employment. We find no error in this interpretation of the workers' compensation statute. As noted above, this court adopted the actual-risk rule in *Hanson,* and the deputy's statement of the law is consistent with this rule.

Although the Commissioner incorporated the deputy's actual-risk analysis into his final decision, the Commissioner also appeared to interpret Iowa law to allow compensation under the positional-risk doctrine. *See generally* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 3.04, at 3–5 (2007) (stating under the actual-risk doctrine, the injury is compensable "as long as the employment subjected [the] claimant to the actual risk that caused the injury"); *id.* § 3.05, at 3–6 (stating under the positional-risk rule, "[a]n injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he would be injured"). The Commissioner stated in his decision:

> When injured, [Blue] was on duty and on the employer's premises. Her employment compelled her to traverse those stairs. Accordingly, any injury she sustained as a result of traversing the stairs arose out of and in the course of her employment unless something in the evidence establishes otherwise.

The Commissioner seems to be applying the rule "that causal connection is sufficiently established whenever [the employment] brings claimant to the position where he or she is injured." *Id.* ch. 7, scope, at 7–1. Iowa has not

adopted the positional-risk rule, and we decline to do so now under the circumstances presented by this case.

Larson argues in his treatise that an unexplained fall should be compensated under the positional-risk rule. *Id.* § 7.04[1][a], at 7–28 to 7–29. Blue argues her injury arose from an unexplained fall, and Iowa should permit compensation under the positional-risk rule. We disagree that Blue's stumble is unexplained. The Commissioner found that Blue tripped when she lost her footing on the stairs.[6] Such an occurrence is easily explained by the process of going down stairs: one must necessarily lift one's foot to clear the current step, carefully position one's foot on the next step, and all the while maintain one's balance. Blue did not do so. Thus, Blue's stumble was readily explainable by the natural configuration of stairs and the care required to traverse them.

To the extent the Commissioner interpreted Iowa law to permit an award of benefits under the positional-risk rule, the Commissioner erred. Notwithstanding this error, we do not believe the employer's substantial rights were prejudiced because the claimant met the "arising out of" requirement under the actual-risk analysis incorporated in the Commissioner's final decision. Focusing then on the actual-risk rule, we now examine whether the Commissioner's decision was "[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact." Iowa Code § 17A.19(10)(*m*).

## IV. Application of Law to The Facts of This Case.

In light of the principles and case law reviewed above, we are not persuaded the Commissioner's application of the actual-risk rule to the facts of this case was irrational, illogical, or wholly unjustifiable. Blue

---

[6]The Commissioner found that Blue's stumble was not idiopathic, and the employer does not challenge this finding on judicial review.

injured her ankle when she stumbled as she was walking down stairs. It was not disputed that these stairs were a condition existing in her workplace. Moreover, it is a matter of common knowledge that stairs pose an actual risk of stumbling or falling when traversing them, similar to the risk posed by going up and down ladders. Although Blue did not stumble due to any particular defect in or condition of the stairs, it is not necessary under Iowa case law that the stairs in Blue's workplace be more dangerous than a typical set of steps.[7] In addition, it matters not that she stumbled through her own inattention. Blue's misstep was causally related to the fact that she was walking on stairs, and therefore, the Commissioner rationally concluded her injury arose out of her employment.

This case is decidedly different from *McIlravy*, in which the employee injured his knee walking across a level floor, *Gilbert*, in which the employee arguably injured his neck straightening up from signing a document, *Miedema*, in which the employee injured his back turning to flush the toilet, and *Musselman*, in which the employee injured his back leaning against a wall for balance. *See McIlravy*, 653 N.W.2d at 326; *Gilbert*, 637 N.W.2d at 195; *Miedema*, 551 N.W.2d at 310; *Musselman*, 261 Iowa at 356, 154 N.W.2d at 130. In each of these cases, although the employee may have been in the course of his employment, there was no condition of his employment, no risk of his employment activities, and no hazard in his

---

[7]The district court concluded the Commissioner incorrectly held a causal connection between Blue's employment and her injury was established under the actual-risk rule. In explaining why Blue's injury did not arise out of her employment, the court pointed out there was no "indication that the conditions of Blue's employment exposed her to a hazard *not generally associated* with traversing stairs." Although the district court purported to apply the actual-risk rule, its rationale is more consistent with the discarded increased-risk rule. This detour to increased-risk analysis may account for the district court's mistaken conclusion that the Commissioner's application of the actual-risk rule was incorrect.

workplace that was related to his injury.[8]  In contrast, in the present case, Blue stumbled *on the stairs*, the Commissioner finding that "[t]he injury occurred *from* the hazard of traversing stairs." (Emphasis added.)  It is this causal relationship between a condition of Blue's employment—the stairs—and her injury that distinguishes the present case from those in which we have determined the employee's injury was not compensable.

## V.  Conclusion and Disposition.

We disagree with the district court's conclusion that the Commissioner erred in ruling Blue's injury arose out of her employment. Therefore, we reverse the district court's judgment and remand this case for entry of a judgment affirming the Commissioner's decision awarding workers' compensation benefits to Blue under the actual-risk rule.

**REVERSED AND REMANDED.**

---

[8]We make this statement in reference to *McIlravy* and *Gilbert* on the basis of the factual scenario held by the court to provide a reasonable basis for the insurer's denial of the employee's claim, not on the basis of the facts as found by the Commissioner for purposes of awarding workers' compensation benefits.