# IN THE COURT OF APPEALS OF IOWA

No. 13-1733
Filed January 14, 2015

**CAROLYN MARCINE JENSON,**
　　　Petitioner-Appellant,

**vs.**

**CUMMINS FILTRATION-LAKE MILLS**
**a/k/a CUMMINS, INC., f/k/a FLEETGUARD, INC.,**
　　　Respondent-Appellee.
_____

　　　Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

　　　An employee appeals the district court's decision affirming the Iowa Workers' Compensation Commissioner's award of benefits. **AFFIRMED.**

　　　Mark S. Soldat of Soldat, Parrish-Sams & Gustafson, P.L.C., West Des Moines, for appellant.

　　　Richard G. Book of Huber, Book, Cortese & Lanz, P.L.L.C., West Des Moines, for appellee.

　　　Considered by Danilson, C.J., and Vogel and Bower, JJ.

**DANILSON, C.J.**

Carolyn Jenson appeals the district court's ruling affirming the Iowa Workers' Compensation Commissioner's award of benefits and penalties for a back injury and denying her claim for a right knee injury. Jenson maintains the district court erred by affirming the commissioners' denial of her knee injury claim. Jenson also maintains the district court erred by entering a judgment not in conformance with the commissioner's award regarding her back injury claim. Because we agree with the district court's review of the commissioner's denial of Jenson's knee claim and find no error with the judgment entered by the district court, we affirm.

**I. Discussion.**

Iowa Code chapter 17A governs judicial review of the decisions of the workers' compensation commissioner. Iowa Code § 86.26 (2013); *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 463 (Iowa 2004). In reviewing a district court's decision on appeal, we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court. *Mycogen Seeds*, 686 N.W.2d at 464. Our standard of review depends on the aspect of the agency's decision that forms the basis of the petition for judicial review. Iowa Code § 17A.19(10).

"Medical causation presents a question of fact that is vested in the discretion of the workers' compensation commission." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 844 (Iowa 2011). Therefore, the commissioner's finding regarding medical causation may only be reversed if it is not supported by substantial evidence. *See* Iowa Code § 17A.19(10)(f).

"Substantial evidence" is statutorily defined as, "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.* § 17A.19(10)(f)(1). When reviewing a finding of fact for substantial evidence, we judge the finding "in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the record cited by any party that supports it." *Id.* § 17A.19(10)(f)(3). "Our review of the record is 'fairly intensive,' and we do not simply rubber stamp the agency finding of fact." *Pease*, 807 N.W.2d at 845 (quoting *Wal–Mart Stores, Inc. v. Caselman*, 657 N.W.2d 493, 499 (Iowa 2003)). Thus, we review Jenson's allegations of error to determine if the factual findings of the workers' compensation commissioner regarding causation are supported by substantial evidence. *See id.*

Jenson also alleges the commissioner erred in application of the law to the facts with his determination that Jenson's injury did not arise out of and in the course of employment. On this assertion of error, "we will disturb the commissioner's decision if it is '[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact.'" *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010) (quoting Iowa Code § 17A.19(10)(m))

In reviewing district court decisions regarding the validity of agency actions, we only look to whether the district court has correctly applied the law." *Miedema v. Dial Corp.*, 551 N.W.2d 309, 310 (Iowa 1996). A final agency decision "should be affirmed by the district court and our appellate courts when

there is no error of law and the decision is supported by substantial evidence in the record as a whole." *Heatherly v. Iowa Dep't of Job Serv.*, 397 N.W.2d 670, 670 (Iowa 1986). "Substantial evidence is that which reasonable minds would consider sufficient to support the conclusions drawn." *Second Injury Fund of Iowa v. Klebs*, 539 N.W.2d 178, 180 (Iowa 1995).

**A. Denial of Claim.**

*1. Causation.* Jenson maintains the district court erred by affirming the commissioner's denial of her knee injury claim. The deputy concluded Jenson failed to meet her burden to prove by a preponderance of the evidence that she suffered a knee injury that arose out of and in course of her employment. The deputy concluded the cause of Jensen's knee pain was due "to degenerative disease exacerbated by poorly controlled diabetes" and Jensen's weight. The commissioner concluded "[t]he deputy's decision was based largely on the deputy's assessment that claimant's testimony was not credible or convincing as to this issue. That credibility assessment and finding of the deputy is affirmed without additional comment."

The district court affirmed, noting the deputy

found that Jensen's testimony regarding her knee injury was not credible, and although Dr. Kuhnlein attributed Jensen's knee injury to her work, the information on which Dr. Kuhnlein relied for this conclusion was not correct. The deputy noted that the specific twisting motion alleged to have caused the knee injury was not mentioned before the IME with Dr. Kuhnlein, and was inconsistent with the description of Jensen' work area and work duties.

This case does not present a classic "battle of the experts" where the commissioner chose between conflicting expert opinions. *Cf. Pease*, 807 N.W.2d at 850. Here, the commissioner relied upon the credibility findings of the

deputy. The deputy did not disagree with the medical evidence that Jenson suffered pain in her right knee and has a "possible medial meniscal tear." The question was whether it arose out of in the course of her employment.

**2. Arising out of and in the course of employment.** Whether or not an injury arose out of and in the course of employment is a mixed question of law and fact; thus, we review the agency determination for abuse of discretion. Iowa Code § 17A.19(10)(m); *Meyer v. I.B.P., Inc.,* 710 N.W.2d 213, 219 (Iowa 2006). While application of the law to the facts is vested by law in the discretion of the agency, if the agency exercises its discretion based on an erroneous interpretation of the law, we are not bound by those conclusions. *Stroup v. Reno*, 530 N.W.2d 441, 443 (Iowa 1995). If the claim of error lies with the agency's interpretation of the law, we may substitute our interpretation for the agency's. *Clark v. Vicorp Restaurants, Inc.*, 696 N.W.2d 596, 604 (Iowa 2005). "[W]e will disturb the commissioner's decision if it is '[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact.'" *Jacobson Transp. Co.*, 778 N.W.2d at 196 (quoting Iowa Code § 17A.19(10)(m)).

Our supreme court has explained compensability for injuries "in the course of" and "arising out of" employment:

> The element of "in the course of" refers to the time, place, and circumstances of the injury. To satisfy this requirement, the injury must take place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto.

*Lakeside Casino v. Blue*, 743 N.W.2d 169, 174 (Iowa 2007) (internal citations and quotation marks omitted). The element of "arising out of" requires proof that

a causal connection exists between the conditions of [the] employment and the injury. *Id.* In other words, the injury must not have coincidentally occurred while at work, but must in some way be caused by or related to the working environment or the conditions of the employment. *Id.* Under the actual-risk doctrine, an injury is compensable as long as the employment subjected the claimant to the actual risk that caused the injury. *Id.* at 176 (citing 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 3.04, at 3–5 (2007)).

Because the commissioner relied upon the deputy's credibility findings and assessment without further comment, we consider the commissioner to have adopted the deputy's reasoning. The deputy noted that Dr. Kuhnlein "commented on claimant's confusing and inability to provide a coherent medical narrative." Clearly, Jenson was unable to identify how or when her knee pain began. At one point she thought she might have slipped on a deck. When asked if that was at home, Jenson stated, "If that is what happened, we have a deck."

The deputy also explained why Dr. Kuhnlein's report was "problematic." The deputy stated that Dr. Kuhnlein's explanation for concluding Jenson's work was a substantial factor for the knee injury was inconsistent with the motion described by Jenson during job tasks. Dr. Kuhnlein asserted she planted her right leg and twists in assembling parts. However, Jenson's testimony suggested very little leg force is needed and almost all of her work was between the shoulder and the waist. The deputy concluded the Jenson's pain in her right knee was more than likely the result of a "degenerative disease exacerbated by

poorly controlled diabetes and" her weight, which Dr. Kuhnlein acknowledged were contributing factors.

Here, the commissioner, by adopting the reasoning and credibility findings of the deputy, has sufficiently specified why the Dr. Kuhnlein's testimony of causation was rejected. We conclude the commissioner did not abuse his discretion, the decision is not irrational, illogical, or wholly unjustifiable, and is supported by substantial evidence in the record as a whole. We agree with the district court's affirmance on this issue.

**B. Application of Penalty.**

Jenson maintains the district court erred by misconstruing the commissioner's award when it converted the award into a judgment. Specifically, Jenson maintains the district court misapplied the fifty-percent penalty awarded by the commissioner when the court applied the penalty to only the unpaid portion of the award rather than the total award. In other words, Jenson maintains that the penalty should be applied to the gross amount of the weekly benefits due for the period from December 8, 2009, through the date of the arbitration hearing, January 7, 2011, which totaled $29,225.28.

In the decision, the commissioner ordered:

> Defendant shall pay to claimant a running award of temporary total/healing benefits from December 8, 2009 at the rate of five hundred twenty-one and 88/100 dollars ($521.88) per week until such time as such benefits shall cease pursuant to Iowa Code section 85.33 or 85.34.
> Defendant shall pay accrued weekly benefits with interest at the statutory rate in a lump sum.
> The credit and interest calculations of claimant . . . shows the unpaid amount totaling nineteen thousand five hundred eighty-two and 69/100 dollars ($19,852.69) as of the date of hearing. These calculations are adopted.

> Defendant shall pay in addition to the weekly benefits previously ordered an additional fifty (50) percent of weekly benefits from December 8, 2009 through the arbitration hearing in this matter [January 7, 2011].

In converting the commissioner's decision to a judgment, the district court applied the fifty-percent penalty to only the amount still owed to Jensen at the time of the arbitration hearing, $19,852.69. This is the amount still owed to Jensen after subtracting the amounts that were paid in short-term and long-term disability benefits.

We find no error with the judgment entered by the district court. Iowa Code section 86.13(4)(a) provides that "the workers' compensation commission shall award benefits in addition to those benefits payable under this chapter . . . up to fifty percent *of the amount of benefits that were denied, delayed or terminated.*" (Emphasis added.)

Additionally, "[t]he purpose or goal of the statute is both punishment and deterrence." *Robbennolt v. Snap-On Tools Corp.*, 555 N.W.2d 229, 237 (Iowa 1996). Under Jenson's argument, Cummins Filtration would be penalized the same amount of money whether Jenson was denied benefits completely or received only one dollar less than which she was entitled. We believe such an application may defeat the statute's purpose rather than advance the desired result. *See Faeth v. State Farm Mut. Auto. Ins. Co.*, 707 N.W.2d 328, 333 (Iowa 2005) ([W]e consider the objects sought to be accomplished and the evils and mischief sought to be remedied and seek a result that will advance rather than defeat the statute's purpose.").

In sum, we find the district court did not err in determining that Cummins Filtration should only pay a penalty for the payments it was required to make less credits for the disability payments paid. Cummins Filtration should only pay a penalty pursuant to section 86.13 for the delayed payments it was required to make. Thus, Cummins Filtration should only pay a penalty on that difference and should not be required to pay a penalty for amounts paid from another source pursuant to section 85.38(2).[1] We affirm the district court on this issue.

---

[1] Iowa Code section 85.38(2) provides:

> a. In the event the employee with a disability shall receive any benefits, including medical, surgical, or hospital benefits, under any group plan covering nonoccupational disabilities contributed to wholly or partially by the employer, which benefits should not have been paid or payable if any rights of recovery existed under this chapter, chapter 85A, or chapter 85B, then the amounts so paid to the employee from the group plan shall be credited to or against any compensation payments, including medical, surgical, or hospital, made or to be made under this chapter, chapter 85A, or chapter 85B. The amounts so credited shall be deducted from the payments made under these chapters. Any nonoccupational plan shall be reimbursed in the amount deducted. This section shall not apply to payments made under any group plan which would have been payable even though there was an injury under this chapter or an occupational disease under chapter 85A or an occupational hearing loss under chapter 85B. Any employer receiving such credit shall keep the employee safe and harmless from any and all claims or liabilities that may be made against them by reason of having received the payments only to the extent of the credit.
>
> b. If an employer denies liability under this chapter, chapter 85A, or chapter 85B, for payment for any medical services received or weekly compensation requested by an employee, and the employee is a beneficiary under either an individual or group plan for nonoccupational illness, injury, or disability, the nonoccupational plan shall not deny payment for the medical services received or for benefits under the plan on the basis that the employer's liability under this chapter, chapter 85A, or chapter 85B is unresolved.

**II. Conclusion.**

Because we agree with the district court's affirmance of the commissioner's denial of Jenson's knee injury claim and find no error with the judgment entered by the district court, we affirm.

**AFFIRMED.**