# IN THE COURT OF APPEALS OF IOWA

No. 14-1070
Filed April 8, 2015

**UNITED HEARTLAND, INC. and**
**CAMANCHE COMMUNITY SCHOOL DISTRICT,**
        Respondents-Appellants,

**vs.**

**KATHALEEN BROWN,**
        Petitioner-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Dennis J. Stovall,

Judge.


        An employer school district appeals a judicial review order affirming an

award of benefits by the workers' compensation commissioner to a claimant

teacher based on her respiratory injury arising from exposure to dust or mold in

her classroom.  **AFFIRMED**.


        Thomas D. Wolle of Simmons, Perrine, Moyer, Bergman, P.L.C., Cedar

Rapids, for appellants.

        Paul J. McAndrew Jr. of Paul McAndrew Law Firm, P.L.L.C., Coralville, for

appellee.


        Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

A school district challenges its obligation to pay workers' compensation benefits to a former elementary school teacher who claims she developed respiratory difficulties from exposure to mold or dust in her classroom. The commissioner found Kathaleen Brown proved she "sustained a pulmonary function injury arising out of and in the course of her employment" with the Camanche Community School District. The school district contends that decision was not supported by substantial evidence and represents an "irrational, illogical, or wholly unjustifiable" application of law to fact. Viewing the record as a whole and affording proper deference to the agency's findings, we affirm the award of benefits.

## I.     Background Facts and Proceedings

Brown taught fourth graders at the Camanche elementary school from 1998 through 2010. The fourth grade classrooms were located in the original section of the school built in 1961.[1]

From 1998 through 2000, Brown taught in Room 114, a windowless room with little ventilation. In the fall of 2000, Brown developed severe bronchitis and also received treatment for multiple asthma attacks. During 2000, Brown missed thirteen days of school due to lung ailments. Citing her health problems, she complained to the administration about the uncleanliness of the school and asked to be assigned to a different classroom. In 2001, Brown started teaching

---

[1] The principal testified that section of the elementary school has a flat roof and drop metal pan ceiling tiles that become rusty and stained when water leaks into the building.

in Room 110 and stayed in that location until her employment ended nine years later.

Brown's testimony before the agency showed the coinciding of her lung problems and the presence of contaminants in her classroom. Brown testified to seeing "stained ceiling tiles where there was definitely water intrusion and rusting in holes through those metal pan ceilings." She believed the "buildup of dirt and grunge was an ongoing problem" at the school from 2000 forward. She recalled the heat registers in the classrooms were "filthy." Brown also recalled having problems with bronchial infections and sinus infections during the school years starting in 2000, and then her health would bounce back over the summers when she was away from the school building. Between March 2003 and May 2010, Brown saw her family physician more than two dozen times for respiratory problems, and the visits were almost exclusively during the school year. In October 2007 she was hospitalized for six days with pneumonia. Brown testified: "I didn't realize there was any correlation with a breathing problem until I was actually diagnosed in 2010 with occupational environmental lung disease."

After her hospitalization in 2007, Brown brought a humidifier into her classroom to help with her chronic cough. When refiling it with water, she noticed mold on the filter.[2] Brown sent a sample of the filter to a California laboratory for testing; lab technicians confirmed the presence of mold. The school removed the humidifier from her classroom, informing her she could not have the appliance there because it was not provided by the district.

---

[2] According to Brown, an identical humidifier unit in her home showed no mold accumulation during the same time frame.

The school also followed up with an environmental inspection in the spring of 2008. It was the first of four separate indoor air quality investigations between 2008 and 2011.[3] The 2008 study revealed ventilators in Brown's classroom were "covered by a layer of particulate material." Carpet dust samples showed fungal growth. The study recommended the school district use higher quality air filters, check and change the filters more frequently, and vacuum the floors daily and clean the carpets annually. An industrial hygienist suggested the school develop a "remedial cleaning strategy."

In May 2008, Brown consulted with Dr. Humphrey Wong of Pulmonary Associates in Davenport. He determined she had asthma based on a positive methacholine challenge test.[4] From an overall review of her records, Dr. Wong opined that Brown "had a significant amount of exacerbations and instability of symptoms which seemed to be clustered around the school year despite maximal medical therapy." Dr. Wong referred Brown for allergy testing. She tested negative for five common molds. Dr. Vijay Sabins explained the negative

---

[3] A subsequent inspection in September 2010 found mold growth on surface samples in Brown's classrooms, but overall the findings indicated a low risk to human health. The report recommended cleaning various parts of the ventilator units in those classrooms. On April 25, 2011, the school district retained Dr. Harry Elston to conduct another air quality test. Dr. Elston noted it appeared as though the building had been "recently and thoroughly cleaned before the surveillance." He nevertheless observed "multiple instances of historical and current water intrusion throughout the building." An air sample from Room 114, where Brown had taught, tested positive for aspergillus, a fungus strongly associated with respiratory illness and which was not identified in an outdoor air sample. Brown retained industrial hygienist Daniel Brust to perform yet another test on April 29, 2011. Brust detected elevated levels of carbon dioxide, indicating a lack of fresh air circulating in the classrooms. He also noted stained ceiling tiles indicating water intrusion episodes from a leaky roof.

[4] Another expert in the case, Dr. Laurence Fuortes, explained the methacholine challenge test measures an individual's degree of airway sensitivity to inhalant exposure at various doses.

results did not rule out environmental molds as the cause of Brown's reactive airway reactions. In addition, the testing showed Brown was sensitive to the inhalant aspergillus.

Also in 2008, Brown surveyed her colleagues at the elementary school because she believed others were experiencing breathing problems like hers. Brown provided the results to the school district.

Brown's last day at work was May 26, 2010. Ten days earlier, she had a reactive airway breathing attack at school and sought help from the school nurse, who saw Brown using her emergency inhaler and suggested Brown ask her physician about using an oxygen tank while she was at school. Brown's pulmonologist, Dr. Wong, placed her on a maintenance dose of steroids to help her get through the school year. But on May 25, Brown fell ill at school and the following day had a more severe incident in the school building, requiring her to go home early. She did not return for the final days of the term.[5]

On June 2, 2010, Brown sought an opinion from Dr. Charles Bruyntjens, a pulmonary specialist. He diagnosed Brown with occupational environmental lung disease, hyper-reactive airways, and shortness of breath. He found the school environment either started her condition or aggravated a preexisting condition. In the fall of 2010, Brown received treatment from Huxley Family Physicians, specifically Dr. Allison Testroet and Physician's Assisstant Hollie Wicker. They believed "her recurrent sinus and bronchial infections were related to her hyper-reactive airways caused by exposure while working at the Camanche school."

---

[5] After Brown exhausted her sick leave, the school board voted on May 11, 2011 to terminate her employment effective at the end of the academic year.

Brown filed a claim for workers' compensation benefits on October 28, 2010. Brown, who was then fifty-seven years old, alleged she was exposed to contaminants in her workplace affecting her lungs, bronchial passages, and whole body. She alleged her injury date as June 2, 2010. The school district and its insurer United Heartland (collectively the school district) filed an answer denying her allegations.

In April 2011, while her workers' compensation claim was pending, Brown saw Dr. Jason Wittmer, a pulmonologist practicing in Des Moines.[6] After examining Brown, Dr. Wittmer found no abnormal lung function and no airway obstruction. He opined that her symptoms of difficulty breathing were "discordant with the available objective measures."

A few months later, Brown's attorney arranged for an independent medical examination with Dr. Joel Kline at the University of Iowa Hospitals Pulmonary Clinic in August 2011. After clinical testing, Dr. Kline reached an opinion that Brown suffered from asthma, which had been substantially aggravated by exposures she received while at the school. He believed the aggravation of her respiratory condition was more likely than not related to "water damage" in the workplace.

In September 2011, the school district's attorney sought an opinion from Dr. Laurence Fuortes of the University of Iowa College of Public Health concerning the environmental conditions of the elementary school and Brown's

---

[6] When Brown moved from Camanche to Huxley later in 2010, it was inconvenient to continue treatment with Dr. Bruyntjens, who practices in Davenport, and she decided to locate a pulmonologist in central Iowa. The deputy mistakenly stated in the arbitration ruling that Dr. Wittmer was retained by the school district to provide an IME.

physical symptoms. After reviewing the indoor air quality reports, Dr. Fuortes opined "the elementary school was not grossly contaminated" at least "in the post remediation period." But he also acknowledged the ventilation systems showed evidence of contamination, including mold. Dr. Fuortes also commented on Brown's diagnosis, saying if she had problematic asthma, it was not obvious at the present time.

A deputy workers' compensation commissioner heard the matter on January 19, 2012, and issued an arbitration decision on April 10, 2012. The deputy decided Brown met her burden of proving an injury arising out of her employment. The school district appealed and Deputy Commissioner Larry Walshire, acting by designation of the commissioner, affirmed the arbitration decision on May 9, 2013.

The school district sought judicial review. The district court affirmed the agency's decision that Brown suffered a compensable injury arising out of her employment with the school district. The school district challenges the judicial review ruling on appeal.

## II.    Scope and Standards of Review

Courts review agency action under Iowa Code chapter 17A—the Iowa Administrative Procedures Act. *Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 149 (Iowa 1996). Appellate courts and district courts both review for the correction of legal error. *Id.* at 149–50. If we reach the same conclusion as the district court we affirm, if not we reverse. *Grundmeyer v. Weyerhaeuser Co.*, 649 N.W.2d 744, 748 (Iowa 2002).

Under section 17A.19(10), we may "reverse, modify, or grant other appropriate relief" if we decide the commissioner's award of benefits "is not supported by substantial evidence" or is "[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact that has clearly been vested by a provision of law in the discretion of the agency." *See* Iowa Code § 17A.19(10)(f), (m) (2011).

The legislature defined "substantial evidence" as "the quantity and quality of evidence that would be deemed sufficient by a . . . reasonable person, to establish the fact at issue." *Id.* § 17A.19(10)(f)(1). Evidence is not insubstantial just because another factfinder may have drawn a different conclusion. *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011). The only question on appeal is whether the conclusion reached by the agency is supported by sufficient evidence. *Id.* We view the evidence through the lens of the record as a whole. Iowa Code § 17A.19(10)(f)(3).

Our review is fact-intensive and thorough; we do not simply "rubber stamp" the agency's decision. *Pease*, 807 N.W.2d at 845. But at the same time, we read the agency's findings broadly and liberally with an eye to upholding rather than defeating its decision because the purpose of the law is to benefit workers. *See IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 632 (Iowa 2000).

## III.    Injury "arising out of" employment

The Iowa workers' compensation provisions cover "all personal injuries sustained by an employee arising out of and in the course of the employment." Iowa Code § 85.3(1); *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 220 (Iowa 2006). Our

courts have teased that statutory language into four elements that must be proven to recover from the employer: "(1) the claimant suffered a 'personal injury,' (2) the claimant and the respondent had an employer-employee relationship, (3) the injury arose out of the employment, and (4) the injury arose in the course of the employment." *Meyer*, 710 N.W.2d at 220.

In this case, the school district challenges Brown's proof of the first and third elements—claiming she did not establish she suffered an injury[7] and, even if she did have an injury, she did not prove her condition "arises out of" her employment at the Camanche elementary school. We will address both claims in turn.

## A. Proof of Injury

The school district contends substantial evidence does not support the acting commissioner's conclusion that Brown suffered from "a pulmonary function injury" related to her work. The district highlights the opinions of Dr. Wittmer and Dr. Fuortes. Dr. Wittmer did not believe Brown had asthma and found no evidence of airflow obstruction or "other pulmonary functional abnormality." Likewise, Dr. Fuortes found Brown did not show a "chronic impairment of the respiratory system." The school district then dismisses the "contrary opinions of Drs. Bruyntjens and Kline." The district contends the agency found Dr. Bruyntjens "was simply not credible" and asserts Dr. Kline's opinion was based on erroneous information supplied by Brown.

---

[7] The school district asserted the deputy failed to analyze Brown's case under Iowa Code chapter 85A rather than under chapter 85. But the district notes it is not appealing the agency's finding that Brown's claim is properly analyzed as an injury rather than an occupational disease.

We are not persuaded by the school district's substantial evidence argument for two reasons. First, we cannot totally disregard the opinion of Dr. Bruyntjens. In asking us to do so, the district overstates the agency's credibility finding. It is true the acting commissioner's characterized Dr. Bruyntjens's testimony as "confusing and not helpful" and stated that he appeared to "contradict himself on more than one occasion." But the agency did not find his views to be entirely unreliable or unbelievable. An agency may accept or reject an expert opinion in whole or in part. *Sherman v. Pella Corp.*, 576 N.W.2d 312, 321 (Iowa 1998). The record included evidence that Dr. Bruyntjens was a well-trained pulmonologist who diagnosed Brown as having an occupational environmental lung disease, including hyper-reactive airways and shortness of breath. He based his diagnosis on Brown's medical history as documented by Dr. Wong, as well as Brown's outward symptoms. Like the district court, we conclude the opinion of Dr. Bruyntjens contributes to the substantial evidence supporting the agency's finding of injury.

Second, we do not perceive Dr. Kline's opinion as being tainted by the subjective information he received from Brown. Dr. Kline reviewed Brown's medical records, including earlier pulmonary function tests, before examining her. He found a positive methacholine challenge test to support his diagnosis of asthma. He also reviewed several air quality reports, which discussed examples of water damage to the school he reasonably considered in reaching his opinion that the school environment caused or exacerbated her condition.

The agency was entitled to rely on Dr. Kline's assessment of Brown's lung injury and its nexus to the school environment, as well as accepting at least some of the opinions from Dr. Bruyntjens. We are not allowed to reweigh the evidence considered by the acting commissioner. *See Westling v. Hormel Foods Corp.*, 810 N.W.2d 247, 254 (Iowa 2012). Accordingly, we find substantial evidence to back the agency's conclusion that Brown suffered a pulmonary function injury.

## B. Causal connection to employment

Having determined Brown suffered an injury at the time of the employment relationship, we turn to the third requirement—whether the injury "arose out of" her work for the school district. *See Meyer*, 710 N.W.2d at 222. An injury "arises out of" the employment if a causal connection exists between the employment and the injury. *Id.* In the context of workers' compensation law, this causation element means the injury must be a "natural incident" of the work or, in other words, "a rational consequence of the hazard connected with the employment." *Id.* (explaining concept of proximate or legal cause from tort law is misplaced in deciding "work-connectedness" for compensation law).

The school district argues Brown cannot show her injury was caused by harmful conditions in the elementary building. The district contends "at least some dust, some moisture, and some mold" is incidental to "every workplace, everywhere." The district argues, without citation to any authority, that because there was no evidence the dust, mold, and moisture in the elementary school

was greater than anywhere else, Brown's injury cannot be said to have arisen out of her employment.[8]

In response, Brown emphasizes that "employers take employees as they find them at the time of employment," citing *Bearce v. FMC Corp.*, 465 N.W.2d 531, 536 (Iowa 1991). The district court seized on that argument, stating: "the fact that air quality tests found conditions at the school that would not be hazardous for most humans is irrelevant." The court believed the air quality tests provided "numerous examples of conditions, elements or substances in the school that may afflict a susceptible individual." In the court's estimation: "There is ample evidence in the record to support a finding that [Brown's] pulmonary problems were caused by a condition, element, or substance in the workplace."

We agree with the district court. The agency record contains expert evidence establishing a causal connection between her injury and conditions in the elementary school. On the question of conditions or working environment, the record is replete with proof that water had infiltrated the roof and ceiling tiles in the fifty-year-old wing of the school building that housed the fourth grade classrooms where Brown taught. A history of water intrusion was documented by Dr. Elston, the industrial hygienist retained by the school district in 2011. That water damage, in the opinion of Dr. Kline, more likely than not was the culprit behind Brown's lung injury. As Dr. Bruyntjens asserted: "where there is water

---

[8] Iowa courts have abandoned any requirement that the employer subject the employee to a risk or hazard greater than that faced by the general public. *Lakeside Casino v. Blue*, 743 N.W.2d 169, 174–75 (Iowa 2007) (employing actual-risk rule rather than increased-risk rule).

there is mold." Brown herself documented mold on the filter of her humidifier. In addition, indoor air testing pointed to heavy dust accumulation and elevated levels of carbon dioxide from low ventilation in the building. Even Dr. Fuortes acknowledged Brown complained of respiratory symptoms consistent with a poorly maintained ventilation system.

The expert testimony establishing causation is corroborated by Brown's evidence from lay persons who experienced sinus and respiratory problems when they were in the elementary building during the school year, which dissipated when they were away from the building.[9] For instance, fellow teacher Lisa Clarke recalled suffering sinus headaches, drainage, and sore throats while teaching in a classroom that harbored a "musty, moldy type of smell." Another teacher, Susan Reckman, testified she incurred regular sinus infections during her years of teaching in the elementary school that went away when she was gone from the building; she also recalled water-stained ceiling tiles and other "wet places" around the school. Lori Lyons, a mother of two students, testified they were repeatedly diagnosed with respiratory infections and asthma while attending Camanche elementary from 2002 through 2009, but have had far less health problems since leaving the school.

In summary, the agency's findings of fact were supported by substantial evidence and its application of law to the facts was not irrational, illogical or

---

[9] We acknowledge the agency found the probative value of the depositions and testimony from the lay witnesses to be "quite low." But the agency decided the nonprofessional evidence could be used to bolster the expert testimony.

wholly unjustifiable.  *See* Iowa Code § 17A.19(10); *Lakeside Casino*, 743 N.W.2d at 173.

**AFFIRMED.**