Jerry MEYER, Appellee,

v.

IBP, INC., Appellant.

No. 04–1911.

Supreme Court of Iowa.

Feb. 17, 2006.

James Drury II, Dakota Dunes, South Dakota, for appellant.

Robert Rush of Rush & Nicholson, P.L.C., Cedar Rapids, for appellee.

CADY, Justice.

In this appeal from a decision by the workers' compensation commissioner denying benefits to the claimant, the parties dispute whether the injury arose out of and in the course of employment. The district court reversed the commissioner's decision, and the court of appeals reversed the district court. We vacate the decision of the court of appeals, reverse the district court judgment, and remand to the commissioner for further proceedings.

## I. Background Facts and Proceedings

Jerry Meyer obtained employment at an IBP plant in Waterloo through a staffing agency called Advance Services, Inc. (ASI). ASI placed Meyer at IBP on October 10, 2000. Meyer was assigned a job that required him to cut the tongues from hog heads delivered on a conveyor belt and to place the tongues on another conveyor belt. This job is known as "popping tongues." Meyer remained an employee of ASI until he completed a sixty-day probationary period.

Meyer first experienced pain in his hand at work during this probationary period, when he was still employed by ASI. He experienced swelling in his fingers and soreness in his wrist. He notified IBP, visited the health department at IBP, and was told it was ·"break-in pain." Meyer

continued working with no restrictions or other actions taken. His employment with ASI concluded on Friday, December 15, 2000.

On Monday, December 18, 2000, IBP hired Meyer as a regular employee to perform the same job he performed during his probationary period. Meyer worked a full shift on December 18, was off work on December 19 and 20, and worked a full shift on December 21. On December 22, while cutting tongues, he felt a popping or snapping sensation and "a shot of pain go right straight up [his] middle finger." His left hand then went numb. Meyer stopped working and went to the health department at IBP. The IBP nurse applied ice to Meyer's hand and kept him in the health center for the remaining forty-five minutes of his shift. Meyer returned to work December 26 and continued to experience swelling in his hand and arm. He notified the health department and was told to go to the hospital.

James Haag, a physician's assistant at the hospital, noted a flexor strain in Meyer's left middle finger and a median nerve injury in his left wrist. Haag restricted Meyer from use of his left hand, fitted him with a brace, and prescribed physical therapy and pain medication. Meyer returned to work, and IBP placed him on light-duty work to accommodate his restriction. Meyer's pain persisted, and he returned to Haag two days later on December 28. Haag adjusted Meyer's medication but did not modify his restriction. On January 25, 2001, Meyer underwent an electromyogram (EMG) test by Dr. Brian Sires. The test revealed a diagnosis of carpal tunnel syndrome of the left wrist and left ulnar neuropathy at the elbow. Haag referred Meyer to Dr. Thomas Gorsche, an orthopedic surgeon. Dr. Gorsche suggested cubital-tunnel-release and nerve-transposition surgery as a treatment option for Meyer, but Meyer wanted to take some time to consider the surgery.

Meanwhile, Meyer quit his job at IBP in March 2001. In addition, on April 13, a workers' compensation examiner for IBP wrote a letter to Dr. Gorsche. In the letter, the examiner asked Dr. Gorsche for his opinion on whether Meyer's condition could be attributed to "2 days of work activities for IBP." Dr. Gorsche responded in the negative.

Meyer was then referred to Dr. Gary Knudson, another orthopedic surgeon. Dr. Knudson also diagnosed Meyer with ulnar neuropathy of the left elbow and probable carpal tunnel syndrome of the left wrist. Dr. Knudson opined:

I believe he is suffering from an overuse injury to his left upper extremity precipitated by his work at IBP this past fall and early winter. . . .

Certainly he was only on the job a few months before beginning significant symptomatology, but he may have had a predisposition to develop this symptomatology which became manifested after significant repetitive use of his arms at IBP.

Dr. Knudson agreed with Dr. Gorsche that surgery was appropriate.

Following the surgery, Meyer was off work until September 4, 2001. On September 10, 2001, Dr. Knudson performed endoscopic-carpal-tunnel-release surgery on Meyer. Dr. Knudson released Meyer to regular duty on October 15, 2001.

IBP's workers' compensation claims examiner wrote Dr. Knudson a letter on January 14, 2002, asking for his opinion as to whether Meyer's condition was "causally related to 2 days of work activities for IBP." Dr. Knudson replied in the negative.

On May 6, 2002, Meyer saw Dr. Farid Manshadi, a physiatrist, for an independent medical examination, at the request

of his attorney. Dr. Manshadi opined that Meyer suffered "cumulative work injury that arose out of and during the course of his work at IBP which resulted in left ulnar nerve neuropathy at the cubital tunnel as well as left carpal tunnel syndrome." Further, Dr. Manshadi opined that Meyer suffered "a permanent partial impairment of his left upper extremity as a result of the cumulative work injury" of ten percent, which translated to a six-percent whole-body impairment.

Meyer sought workers' compensation benefits from IBP under Iowa Code chapter 85 (2001), and penalty benefits under section 86.13, by filing a petition for arbitration in June 2001. A hearing was eventually held. In the written decision, the deputy commissioner described the five issues presented for resolution. The first was "whether claimant received an injury that arose out of [and] in the course of his employment with IBP, Inc."

In resolving this issue, the deputy commissioner relied exclusively on the uncontradicted medical testimony "that the two days claimant performed work as an IBP employee prior to December 22, 2000 would not, of itself, have produced his left upper extremity hand and elbow conditions." The deputy commissioner also found there was no medical testimony showing that "claimant's work incident of December 22, 2000 could, of itself, have either caused or materially aggravated claimant's carpal and cubital tunnel syndromes." Based solely on this evidence, the deputy commissioner concluded Meyer failed to establish "an injury on December 22, 2000, that arose out of and in the course of his employment with IBP, Inc." Therefore, the deputy decided the other issues in the claim did not need to be addressed. The commissioner affirmed and adopted the deputy commissioner's decision.

Meyer sought judicial review. He claimed all the evidence in the record supported a finding that his injury manifested itself on December 22, 2002 and arose out of and in the course of employment, and the commissioner erred by relying on the medical testimony that utilized an improper causation standard.

The district court reversed the decision of the commissioner. It found the conclusion reached by the commissioner that Meyer failed to establish "a compensable injury on December 22, 2000" was not supported by substantial evidence. Instead, the district court determined substantial evidence supported a conclusion that Meyer established an injury that occurred on December 22, 2000, and that it arose out of and in the course of his employment with IBP. The court was persuaded that the circumstances on December 22, 2000, and those that both preceded and followed the event, could only mean the injury occurred on December 22, 2000.

IBP filed a notice of appeal and raised a single issue—whether the district court erred in reversing the commissioner's decision "that Meyer failed to establish that he sustained an injury that arose out of and in the course of his employment" with IBP, Inc. IBP claimed substantial evidence supported the commissioner's ruling. In the section of its appellate brief addressing the scope of appellate review, IBP stated:

> The issue in this appeal has been properly preserved for review as the issue of whether this injury arose out of and in the course of Meyer's employment with IBP, [I]nc. has been the central issue both in the Workers' Compensation Commissioner's decision and the Ruling on Judicial Review.

We transferred the case to the court of appeals. It determined substantial evidence supported the decision of the commissioner. It found the medical testimony

presented at the hearing constituted substantial evidence to support the agency's conclusion that Meyer's injury was not causally related to his two days of employment with IBP. In addition, the court of appeals stated that Meyer had "pointed to no evidence, medical or otherwise," that the incident on December 22, 2000 was a manifestation of Meyer's injury.

Meyer sought further review, claiming the court of appeals "ignored established Supreme Court standards as to when a cumulative injury 'manifests.'" IBP responded that any reliance by Meyer on the cumulative-injury rule was misplaced in this case because the issue on appeal was whether substantial evidence supported the agency's decision that Meyer's injury did not arise out of and in the course of employment. IBP further argued that even assuming the cumulative-injury rule was applicable, the rule would support a finding that the injury manifested itself prior to the time Meyer commenced his employment with IBP. We granted further review.

## II. Standards of Review

The Iowa Administrative Procedure Act, Iowa Code chapter 17A, governs the scope of our review in workers' compensation cases. Iowa Code § 86.26. Under the Act, we may only interfere with the commissioner's decision if it is erroneous under one of the grounds enumerated in the statute, and a party's substantial rights have been prejudiced. *Id.* § 17A.19(10).

█ The issue on appeal has been framed in the context of whether substantial evidence supports the commissioner's determination that Meyer's injury did not arise out of and in the course of employment with IBP. However, in fully considering the parameters of our review, we observe that the issue whether an injury arose out of and in the course of employment presents a mixed question of law and fact. *Hawk v. Jim Hawk Chevrolet–Buick, Inc.*, 282 N.W.2d 84, 87 (Iowa 1979). A question of fact is presented by the operative events that give rise to the injury. *Id.* Unless the events are undisputed, the commissioner must resolve the dispute and determine the facts leading to the injury. *Id.* A question of law is then presented because the commissioner must further determine whether the facts, as determined, support a conclusion that the injury "arose out of and in the course of employment," under our workers' compensation statute. *Id.* (citing *Cedar Rapids Cmty. Sch. Dist. v. Cady*, 278 N.W.2d 298, 298–99 (Iowa 1979); *McClure v. Union et al., Counties*, 188 N.W.2d 283, 284 (Iowa 1971)).

█ On judicial review, courts are bound by the commissioner's resolution of the first question—finding the operative facts from the evidence presented—if supported by substantial evidence in the record as a whole. *Excel Corp. v. Smithart*, 654 N.W.2d 891, 896 (Iowa 2002) (citing *IBP, Inc. v. Harpole*, 621 N.W.2d 410, 414 (Iowa 2001)); *accord* Iowa Code § 17A.19.10(*f*). In other words, the question on appeal is not whether the evidence supports a different finding than the finding made by the commissioner, but whether the evidence "supports the findings actually made." *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 649 (Iowa 2000) (citing *Kiesecker v. Webster City Custom Meats, Inc.*, 528 N.W.2d 109, 110 (Iowa 1995)). On the other hand, the application of the law to the facts—the second question—takes a different approach and can be affected by other grounds of error such as erroneous interpretation of law; irrational reasoning; failure to consider relevant facts; or irrational, illogical, or wholly unjustifiable application of law to the facts. *See* Iowa Code § 17A.19(10)(*c*), (*i*), (*j*),

(*m*). We allocate some degree of discretion in our review of this question, but not the breadth of discretion given to the findings of fact. *See* Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act (1998) Chapter 17A, Code of Iowa (House File 667 As Adopted)* 70 (1998) ("[W]hen an agency is delegated discretion in applying a provision of law to specified facts the scope of review appropriately applied by courts must be deferential because the legislature decided that the agency expertness justifies vesting primary jurisdiction over that matter in the discretion of the agency rather than in the courts."); *see also Clark v. Vicorp Rests., Inc.,* 696 N.W.2d 596, 604 (Iowa 2005) ("Because factual determinations are within the discretion of the agency, so is its application of law to the facts."); *Mycogen Seeds v. Sands,* 686 N.W.2d 457, 465 (Iowa 2004) ("[G]iven that factual determinations in workers' compensation cases are 'clearly vested by a provision of law in the discretion of the agency,' it follows that application of the law to those facts is likewise 'vested by a provision of law in the discretion of the agency.' " (citing Iowa Code § 17A.19(10)(*f*))). When the agency exercises its discretion based on an erroneous interpretation of the law, we are not bound by those "legal conclusions but may correct misapplications of the law." *Stroup v. Reno,* 530 N.W.2d 441, 443 (Iowa 1995).

These different approaches to our review of mixed questions of law and fact make it essential for counsel to search for and pinpoint the precise claim of error on appeal. If the claim of error lies with the agency's findings of *fact,* the proper question on review is whether substantial evidence supports those findings of fact. If the findings of fact are not challenged, but

the claim of error lies ·with the agency's interpretation of the *law,* the question on review is whether the agency's interpretation was erroneous, and we may substitute our interpretation for the agency's. *Clark,* 696 N.W.2d at 604 (citing Iowa Code § 17A.19(10)(*c*), (11)(*b*); *Mycogen Seeds,* 686 N.W.2d at 464). · Still, if there is no challenge to the agency's findings of fact or interpretation of the law, but the claim of error lies with the *ultimate conclusion* reached, then the challenge is to the agency's application of the law to the facts, and the question on review is whether the agency abused its discretion by, for example, employing wholly irrational reasoning or ignoring important and relevant evidence. *See* Iowa Code § 17A.19(10)(*i*), (*j*). In sum, when an agency decision on appeal involves mixed questions of law and fact, care must be taken to articulate the proper inquiry for review instead of lumping the fact, law, and application questions together within the umbrella of a substantial-evidence issue.

In this case, the commissioner found from the evidence that Meyer had a cumulative-trauma injury, but concluded the injury did not arise out of and in the course of his employment with IBP because the limited time Meyer worked for IBP (two days) was not the cause, by itself, of the cumulative-trauma injury. Certainly, there was substantial evidence in the record to support the finding that the two days Meyer worked as a IBP employee did not, by itself, cause the injury. These facts are not in dispute. Instead, the actual issue is whether these facts support the commissioner's conclusion that Meyer's .injury did not arise out and in the course of employment under the applicable legal standards.[1] Accordingly, our task on judi-

---

1. Although a claim of insubstantial evidence is usually used to challenge findings of fact, we understand how it can be implicated, as in this case, in a challenge to a legal conclusion. Error occurs when the commissioner makes a legal conclusion based on facts that are inade-

cial review is to consider if the commissioner either made an erroneous interpretation of the law, or otherwise committed error in applying the law to the facts.

## III. Governing Law

■■ Our workers' compensation statute provides coverage for "all personal injuries sustained by an employee arising out of and in the course of the employment." Iowa Code § 85.3(1); *accord Meade v. Ries,* 642 N.W.2d 237, 243 (Iowa 2002) (citing *Miedema v. Dial Corp.,* 551 N.W.2d 309, 311 (Iowa 1996)). This statutory coverage formula gives rise to four basic requirements: (1) the claimant suffered a "personal injury," (2) the claimant and the respondent had an employer-employee relationship, (3) the injury arose out of the employment, and (4) the injury arose in the course of the employment. *See Freeman v. Luppes Transp. Co.,* 227 N.W.2d 143, 148 (Iowa 1975).[2] The failure of any one requirement results in a denial of a claim for benefits. Yet, all four elements are woven together by the common threads of injury and employment. The first two elements establish the existence of the injury within the ambit of the workers' compensation statute, and the third and fourth requirements work hand in hand to establish a connection between the injury and the work. *See* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 3.01, at 3–3 (2005) [hereinafter Larson]. Nevertheless, each element has its own purpose in the resolution of a workers' compensation claim, and the failure to follow a separate analysis of each element can lead to confusion and potential error.

With respect to the first requirement of an injury, it is sufficient in this case to recognize that carpal tunnel syndrome is an injury under the workers' compensation statute. *Noble v. Lamoni Prods.,* 512 N.W.2d 290, 294 (Iowa 1994). *See generally* Jay M. Zitter, *Workers' Compensation: Recovery for Carpal Tunnel Syndrome,* 14 A.L.R.5th 1, 11–12 (1993) ("Carpal tunnel syndrome is a condition produced by compression of the median nerve as it travels through the carpal tunnel at the wrist, resulting in symptoms of tingling, pain, and weakness in the wrist and in the thumb and first three fingers of the hand.... [T]he cause which has been the focus of considerable recent attention is repetitive minor trauma in the modern workplace. Many assembly line tasks ... involve thousands of repetitive hand and

---

quate to satisfy the governing legal standards. Yet, a claim of insubstantial evidence to support a legal conclusion does not give rise to the standard of review applicable to the claim of substantial evidence to support the factual findings by the commissioner. When the commissioner takes a piece of evidence and uses it to draw a legal conclusion to improperly deny compensation, we do not review the conclusion by looking at the record as a whole to see if there was substantial evidence that could have supported the ultimate decision, as argued by IBP in this case. Instead, we review the decision made. If the commissioner fails to consider relevant evidence in making a conclusion, fails to make the essential findings to support the legal conclusion, or otherwise commits an error in applying the law to facts, we remand for a new decision unless it can be made as a matter of law. *See Armstrong v. State of Iowa Bldgs. & Grounds,* 382 N.W.2d 161, 165 (Iowa 1986).

**2.** In addition to the requirement of an injury, we have said that our workers' compensation act primarily requires the worker to establish: "(1) an employer-employee relationship at the time of the injury, (2) an injury arising out of and in the course of employment, and (3) the disability ... proximately caused by the injury." *Freeman,* 227 N.W.2d at 148 (citations omitted). Thus, we recognize proximate cause between the disability and injury is another requirement of compensation, but it is not directly implicated by section 85.3(1) and is not an issue in this appeal.

wrist motions, such as slicing, pushing, or pressing, often without sufficient break or resting time."). It is known as a repetitive-trauma injury, or cumulative injury, because it normally develops over time. *Id.*

▮ The injury element also includes a component of "reasonable definiteness in time." 3 Larson § 50.01, at 50–2. The reason for requiring a definite date of injury is that a number of important questions often cannot be answered without considering the date of injury, including "which employer and carrier is on the risk." *Herrera v. IBP, Inc.,* 633 N.W.2d 284, 287 (Iowa 2001) (quoting *Thilges v. Snap–On Tools Corp.,* 528 N.W.2d 614, 618 (Iowa 1995)); *accord* 3 Larson § 50.01, at 50–2. In other words, the time of injury must normally be known to properly consider the other elements of a claim for compensation. For example, the relevant time period to establish the second element—existence of an employer-employee relationship—is the time of injury. *See Freeman,* 227 N.W.2d at 148 (worker must establish "employer-employee relationship at the time of the injury" (citing *Hassebroch v. Weaver Constr. Co.,* 246 Iowa 622, 67 N.W.2d 549 (1954))). Similarly, it would be difficult to properly analyze the third element—the injury arose in the course of employment—without first determining the time of the injury. Under either element, an employer is not "on the risk" for an injury sustained prior to the time the employee commenced work for the employer.[3] *See, e.g., Grundmeyer v. Weyerhaeuser Co.,* 649 N.W.2d 744, 752–53 (Iowa 2002) (no compensation from new employer for hearing loss that occurred before employment commenced).

▮ We use the "cumulative-injury rule" to establish the date of injury in repetitive-trauma cases. *McKeever Custom Cabinets v. Smith,* 379 N.W.2d 368, 374 (Iowa 1985); *accord Herrera,* 633 N.W.2d at 287; 3 Larson § 50.01, at 50–2. The date of the repetitive-trauma injury under the cumulative-injury rule "is the date on which disability manifests itself." 3 Larson § 50.05, at 50–11. " 'Manifestation' is best characterized as 'the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person.' " *Oscar Mayer Foods Corp. v. Tasler,* 483 N.W.2d 824, 829 (Iowa 1992) (quoting *Peoria County Belwood Nursing Home v. Indus. Comm'n,* 115 Ill.2d 524, 106 Ill.Dec. 235, 505 N.E.2d 1026, 1029 (1987)); *accord Excel Corp.,* 654 N.W.2d at 896; *Herrera,* 633 N.W.2d at 288. It is a fact-based determination in which the commissioner is entitled to substantial latitude. *Oscar Mayer Foods Corp.,* 483 N.W.2d at 829 (citation omitted). Factors to be considered in determining when an injury manifests itself include "absence from work because of inability to perform, the point at which medical care is received, or others, none of which is necessarily dispositive." *Id.* at 830.

The second requirement means that an employee-employer relationship must exist "at the time of the injury." *Freeman,* 227 N.W.2d at 148. There can be myriad issues relating to the requirement of an employee-employer relationship that may ultimately support a denial of compensation, but none is relevant to this case. *See* Iowa Code § 85.61(2) (defining "employer" and providing specific inclusions); *id.* § 85.61(11)-(13) (defining "employee" and

---

**3.** We, of course, recognize certain rules that may impose responsibility on an employer for conditions that predated the employment or

for the aggravation of prior injuries. *See Excel Corp.,* 654 N.W.2d at 896–900.

providing specific inclusions and exclusions). *See generally* 3 Larson chs. 60–68, at 60–1 to 68–14 (devoted to employment status and the rules governing exceptions such as independent contractors). Instead, the relevant inquiry in this case is whether the employment relationship existed at the time of the injury.

Once a worker is found to have suffered an injury at the time of the employment relationship, the third and fourth requirements must be considered to decide if the injury "ar[ose] out of and in the course of the employment." Iowa Code § 85.3(1). "Few groups of statutory words in the history of law have had to bear the weight of such a mountain of interpretation as has been heaped upon this slender foundation." 1 Larson § 3.01, at 3–3. We have contributed to this cordillera of law by our own interpretation of this venerable language:

> An injury "arises out of" the employment if a causal connection exists between the employment and the injury. The injury arises "in the course of" employment when the injury and the employment coincide as to time, place, and circumstances. Both tests must be satisfied for an injury to be deemed compensable.

*Meade*, 642 N.W.2d at 243–44 (citations omitted).

Thus, the "course of employment" element is satisfied when the injury "takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto." 1 Larson at 12.1. In other words, the injury and the employment must "coincide as to time, place, and circumstances." *Thayer v. State*, 653 N.W.2d 595, 600 (Iowa 2002) (citing *Meade*, 642 N.W.2d at 243–44). This element examines the work period on the date of the injury, the place of the injury, and the activities the worker was engaged in at the time of the injury. *See generally* 3 Larson chs. 12–17, at 12–1 to 17.41 (devoted to principles such as the "going and coming" rule, dual-purpose rule, and deviation rule).

On the other hand, the "arising out of" employment element has a different focus. It means there must be a "casual relationship between the employment and the injury." *Koehler Elec. v. Wills*, 608 N.W.2d 1, 3 (Iowa 2000). Although we have attached a causation label to this element from time to time, it has a special definition in workers' compensation law. The element requires that the injury be a natural incident of the work, meaning the injury must be a " 'rational consequence of the hazard connected with the employment.' " *Id.* at 3–4 (quoting *2800 Corp. v. Fernandez*, 528 N.W.2d 124, 128 (Iowa 1995)). " 'In other words, the injury must not have coincidentally occurred while at work, but must in some way be caused by or related to the working environment or the conditions of . . . employment.' " *Id.* at 3 (quoting *Miedema*, 551 N.W.2d at 311); *see* 1 Larson at 9–1 ("Injuries arising out of risks or conditions personal to the claimant do not arise out of the employment unless the employment contributes to the risk or aggravates the injury.").

In applying this arising-out-of element, it is important not to draw in the causation standards applicable to tort law.[4] The

---

4. We have on occasion injected the term "proximate cause" into workers' compensation cases by stating that the employee must prove that "the injury is a proximate cause of the claimed disability." *Grundmeyer*, 649 N.W.2d at 752 (citing *Sherman v. Pella Corp.*, 576 N.W.2d 312, 321 (Iowa 1998)); *see, e.g., Musselman v. Cent. Tel. Co.*, 261 Iowa 352,

concept of proximate or legal cause applicable to tort law is misplaced in determining work-connectedness under workers' compensation law. 1 Larson § 3.06, at 3–7.

Larson provides a lengthy explanation:

It is instantly apparent that "arising out of the employment" does not mean exactly the same thing as "legally caused by the employment." It is true, as many courts and writers have said, that "arising" has something to do with causal connection; but there are many shades and degrees of causal connection, of which "legal" or "proximate" cause is only one. Taking the words themselves, one is first struck by the fact that in the "arising" phrase the function of the employment is *passive* while in the "caused by" phrase it is *active*. When one speaks of an event "arising out of employment," the initiative, the moving force, is something other than the employment; the employment is thought of more as a *condition* out of which the event arises than as the force producing the event in affirmative fashion. In tort law the beginning point is always a person's *act,* and the act causes certain consequences. In worker's compensation law the beginning point is not an act at all; it is a relation or condition or situation—namely, employment. No one would suggest that the employer's only act, the act of hiring the employee, is the operative factor from which all consequences are to be traced. Thus, at the very outset, it is plain that the attempt to make "arising" equivalent to "causation" is blocked by the words themselves.

One is next entitled to ask, if the original draftsmen meant to say "caused by the employment," why did they not do so? The phrase is not only shorter than the "arising" phrase, but much more familiar; it would have come naturally to any draftsman, unless he or she intended to say something different from "caused by."

Finally, proximate cause or legal cause is out of place in compensation law because, as developed in tort law, it is a concept that is itself thoroughly suffused with the idea of fault; that is, it is a theory of causation designed to bring about a just result when starting from an act containing some element of fault. The primary test of legal cause in the Unites States is foreseeability, which is the "fundamental basis of the law of negligence." Therefore, "if the harm which has actually occurred is one of the particular risks which made the actor's conduct negligent, it is obviously a consequence for which the actor must be held legally responsible." In other words, the essence of the actor's fault is that, although the consequences of his or her conduct were foreseeable, he or she nevertheless carried on that line of conduct. The foreseeability of the consequences is an inextricable part of the fault-character of the act.

But what relevance has foreseeability if one is not interested in the culpability of the actor's conduct? There is nothing in the theory of compensation liability that cares whether the employer foresaw particular kinds of harm or not. The only criterion is connection in fact with the employment, whether it is foreseeable in advance, or apparent only in retrospect. This criterion cannot in any

360, 154 N.W.2d 128, 132 (1967) ("proximate contributing cause"). It is accurate to say an injury must proximately cause the disability, but is not accurate to say the employment must proximately cause the injury. The injury need only "arise out of" the employment—a less onerous standard than the proximate-cause standard from tort law.

logical sense be made to depend on foreseeability. . . .

*Id.* at 3–7 to 3–8; *accord State Farm Mut. Auto. Ins. Co. v. Rains,* 715 S.W.2d 232, 236 (Ky.1986) (noting court's rejection of "utilizing the concepts of 'proximate cause, or foreseeability' as tort law concepts not applicable to workers' compensation cases" in determining whether an injury arose out of employment (citing *Corken v. Corken Steel Prods., Inc.,* 385 S.W.2d 949, 950 (Ky.1964))); *Gibberd ex rel. Gibberd v. Control Data Corp.,* 424 N.W.2d 776, 780 (Minn.1988) ("[A] causal connection—*not necessarily in the proximate cause sense*—must exist between the injury and the employment." (Citations omitted; emphasis added.)); *Steinberg v. S.D. Dep't of Military & Veterans Affairs,* 607 N.W.2d 596, 602 (S.D.2000) (" '[A]rising out of and in the course of employment' does not require that the latter be the proximate cause of injury. If the legislature had meant that, it would have said so." (quoting *Anderson v. Hotel Cataract,* 70 S.D. 376, 17 N.W.2d 913, 916 (1945))).

## IV. Analysis

With this governing law in mind, we return to the decision of the commissioner. The commissioner had four elements to consider in deciding the initial issue presented at the hearing: (1) Did Meyer sustain an injury (injury element)? (2) Did Meyer and IBP have an employer-employee relationship at the time his injury occurred (employment-status element)? (3) Was the injury related to the working environment or conditions of the job (arising-out-of-employment element)? and (4) Did the injury coincide with the time and place of employment (course-of-employment element)? Failure of proof of any one of these elements would have taken Meyer's claim out of the statutory coverage formula for compensability. In considering the first element, the commission-

er found from the evidence that Meyer sustained a cumulative-trauma injury. However, the commissioner skipped the second and fourth elements and proceeded directly to the third element. The commissioner did not apply the cumulative-injury rule to decide the date of the injury, or decide that Meyer's injury manifested before his employment with IBP commenced. Instead, the commissioner only addressed the arising-out-of element and found that two days of work for IBP could not, by itself, have produced Meyer's injury. The commissioner found a failure of proof on the arising-out-of element based solely upon the medical opinions by Drs. Gorsche and Knudson that Meyer's two days of work for IBP was not, by itself, the cause of the injury.

The undisputed evidence in the case revealed that the particular job performed by Meyer during his two days of employment with IBP was the same job performed for his prior employer. It involved repetitive hand and arm motions, conditions that are known to lead to carpal tunnel syndrome or cumulative-trauma injury. It was undisputed that Meyer suffered this type of injury. Thus, although Meyer only worked a short time on the job, the type of injury he sustained was nevertheless a "rational consequence" of a hazard of the work he performed with IBP. *Koehler Elec.,* 608 N.W.2d at 3. The type of work he performed placed him at a greater risk of carpal tunnel syndrome, which meets the arising-out-of employment standard regardless of the number of days worked. *See McIlravy v. N. River Ins. Co.,* 653 N.W.2d 323, 332 (Iowa 2002) (knee injuries sustained by iron worker while walking was work-related based on evidence that the nature of the profession placed the worker at greater risk for knee injuries than other professions). Yet, the evidence the commissioner relied upon in

the written decision reveals the commissioner utilized a tort-law causation standard that required Meyer to prove the two days of employment with IBP, by themselves, caused the injury.

Under the arising-out-of element decided by the commissioner, Meyer was only required to "prove that a condition of his employment increased the risk of injury." *Koehler Elec.*, 608 N.W.2d at 5; *accord Miedema*, 551 N.W.2d at 311 ("Miedema fails to establish that use of Dial's restroom exposed him to any increased risk of injury. Rather, any risk of back injury associated with use of Dial's toilet seems to have been singular to Miedema and is not causally connected to the conditions of the restroom facilities."); 1 Larson § 3.03, at 3–4 (stating that under the increased-risk doctrine, a test for determining whether an injury arose out of the employment, "the distinctiveness of the employment risk can be contributed [to] by the increased *quantity* of the risk that is *qualitatively* not peculiar to the employment"). Thus, Meyer could have had a predisposition to develop carpal tunnel syndrome prior to beginning his employment with IBP. Yet, if the injury manifested during his first *minute* of popping tongues as an IBP employee, it still would have arisen out of his employment because his job duties with IBP, as shown by the record, increased the risk that carpal tunnel syndrome would manifest. *See Koehler Elec.*, 608 N.W.2d at 5. Accordingly, properly applied to the facts, our law reveals Meyer satisfied the arising-out-of element as a matter of law. Contrary to the conclusion of the commissioner, this element does not support a denial of compensation.

■■■ The error committed by the commissioner also reveals the error committed by the district court. In our judicial review of workers' compensation cases, we review the district court decision to decide if our legal conclusions mirror those reached by the district court. *Cargill, Inc. v. Conley*, 620 N.W.2d 496, 500 (Iowa 2000) (citations omitted). The district court not only found the legal conclusion reached by the commissioner that the injury did not arise out of and in the course of employment was not supported by the evidence, but went on to further find the evidence as a whole satisfied the arising-out-of-and-in-the-course-of-employment standard as a matter of law. This latter conclusion by the district court is where error ultimately occurred. In reaching this conclusion, the district court exceeded the scope of permissible judicial review of agency decisions by making findings on the course-of-employment element that the commissioner never made, when the facts in the record necessary to make the finding supported two reasonable conclusions.

As revealed by our analysis in this case, the basic issue turns on whether Meyer's injury manifested before or after he became an IBP employee. However, the commissioner never found any facts to support a conclusion that the injury manifested before or after Meyer became an IBP employee, and this question cannot be decided on judicial review as a matter of law because the evidence clearly could support two reasonable conclusions. We have said that the commissioner commits error by failing to weigh and consider all of the evidence, and the remedy on judicial review for this type of error is to remand the case for a decision by the commissioner on the existing record, not for the district court to find the facts and make the decision. *Armstrong*, 382 N.W.2d at 165. The reviewing court may determine facts as a matter of law only when there is no dispute in the relevant evidence and reasonable minds could not reach different inferences from the evidence. *Id.*

The record reveals a conflict in the evidence regarding the time when the injury sustained by Meyer manifested. There is evidence that could support a finding that the injury occurred before Meyer commenced work for IBP and there is evidence to support a finding it occurred after he commenced work for IBP. Thus, remand is necessary for the commissioner to reevaluate the evidence and decide this question in light of the relevant law, as well as all other questions that may follow.

## V. Conclusion

We vacate the decision of the court of appeals. We reverse the district court judgment and remand the case to the workers' compensation commissioner for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**