# IN THE COURT OF APPEALS OF IOWA

No. 24-1991
Filed October 1, 2025

**JERRY HAYES,**
        Plaintiff-Appellant,

**vs.**

**CHRISTIAN RETIREMENT HOMES, INC., d/b/a RIDGECREST VILLAGE SENIOR LIVING CENTER and WEST BEND MUTUAL INSURANCE CO.,**
        Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.

A petitioner appeals the district court's ruling affirming the Iowa Workers' Compensation Commissioner's order, which in turn affirmed the deputy commissioner's arbitration decision in its entirety. **AFFIRMED.**

Nicholas L. Shaull (argued) of Spaulding & Shaull, P.L.C., Des Moines, for appellant.

Morgan R. Todd Borron (argued) and Michael S. Roling of Peddicord Lillis, LLP, West Des Moines, for appellees.

Heard at oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

Jerry Hayes appeals the district court's ruling affirming the Iowa Workers' Compensation Commissioner's order, which in turn affirmed the deputy commissioner's arbitration decision in its entirety. Hayes petitioned for workers' compensation benefits against Christian Retirement Homes, Inc. d/b/a Ridgecrest Village Senior Living Center and West Bend Mutual Insurance Company (together, "CRH"), alleging that he suffered a permanent disability as the result of a work injury. The deputy commissioner's arbitration decision found that Hayes did not suffer from a permanent disability as a result of his work injury and denied his petition in its entirety. On appeal, Hayes argues the commissioner's decision was not supported by substantial evidence, included an error of law, and was irrational, illogical, and wholly unjustifiable. He additionally argues he is entitled to an award of alternate medical care, necessary medical expenses, and independent medical evaluation (IME) reimbursement. We affirm, finding substantial evidence supported the commissioner's decision. We also agree with the commissioner that the lack of a permanent disability makes Hayes's remaining issues moot.

## I.    Background Facts and Proceedings

In September 2021—the month of his work injury—Hayes was a dishwasher at Ridgecrest. He had worked there since July following a period of unemployment and was sixty-seven years old. At the time he was hired, Hayes had an extensive medical history involving chronic back, neck, and knee problems. We summarize that history and the associated medical records as they relate to the back issues here:

- **March 2003:** "[Hayes] continues to display difficulty coping with his chronic pain . . . . [H]e is unsure of the course of treatment regarding his back pain and leg pain."

- **May 2003:** "[Hayes] states that his therapy is in the process of possibly developing a support group for individuals who share similar situations as they relate to his chronic back pain."

- **February 2014:** "[Hayes] is here with complaints of neck stiffness and low back pain following a [motor vehicle accident]. He was a restrained driver of a car that was hit on the driver side by a[n] F-150 with a plow."

- **January 2015:** Hayes fell down his apartment building's stairwell and injured his lower back.

- **March 4, 2015:** Hayes experienced a slip-and-fall incident after stepping on a patch of ice. He fell and "hit the back of his head" and reported "lower back pain and left shoulder pain." The treating physician noted Hayes's documented history of back pain and "remote history of lumbar surgery." A spine lumbar CT scan was conducted and the physician noted "degenerative change at L4-5 with mild compression of the anterior aspect of the L5 vertebral body and prior exam. There is anterolisthesis of L4-L5 of 12 mm. There is posterior facet sclerosis and spinal stenosis. These changes were present previously but are unchanged."

- **March 17, 2015:** Hayes attended a follow-up from the previous appointment and was referred to physical therapy which he began attending shortly thereafter.

- **November 2016:** Hayes received a disability exam, complaining of low back pain. "[Hayes] states he can only walk about one block due to low back pain. . . . He used to be on disability due to a history of learning disability and back pain."

- **July 2017:** Hayes was involved in another motor vehicle accident in which he was hit on his driver's side. He was seen by his primary care provider, Dr. Crome, for low back pain and neck pain resulting from the accident. "He has a history of previous surgery on his neck with pins in place. . . . He always has low back pain, feels worse after this."

- **September 2017:** Hayes returned to Dr. Crome for a follow-up appointment. He reported continued neck and lower back pain since his most recent accident. Dr. Crome reported that "[Hayes] ha[d] been having some frustration with his chronic pain. He [felt] he [had] been sitting at home more."

- **October 2017:** Dr. Crome again saw Hayes to address "[a]cute bilateral low back pain with bilateral sciatica" and follow up from continued physical therapy, which seemed to be providing positive results.

- **January 2018:** Hayes was involved in another motor vehicle accident, this time involving a head-on collision at approximately thirty miles per hour, resulting in airbag deployment. He visited Dr. Crome for "mild low back pain, stiff shoulder, and left periorbital region swelling."

- **March 2018:** Hayes visited Dr. Crome for an accident follow-up appointment. Dr. Crome ordered Hayes to continue his physical therapy and to limit his work hours.

- **August 2018:** Hayes visited Dr. Panozzo for low back pain treatment, where they discussed a bilateral sacroiliac joint injection. Hayes reported "aching, sharp/stabbing" pain which was aggravated by standing. Hayes returned later that month to receive the injection.

- **September 2018:** Hayes had an injection follow-up appointment which shows "50% overall improvement." A second injection was performed.

- **October 2018:** Hayes had a follow-up appointment for the second injection which showed sixty percent overall improvement.

- **December 2018:** Dr. Crome sees Hayes for a follow-up where Hayes reported that some of his work activities aggravated his back pain. Dr. Crome imposed a permanent restriction on Hayes prohibiting him from lifting more than twenty pounds.

- **March 2019:** Hayes saw Dr. Taylor following referral by Dr. Crome and reported that his back pain may originate from a lumbar surgery he underwent in the 1990s. Later this month Hayes underwent a CT scan which revealed "[a]bnormal—severe disc space narrowing and degenerative L4 anterolisthesis with severe spinal stenosis at L4–5," "[d]isc bulging and bilateral facet arthritis with moderate to severe spinal stenosis at L3–4," and "[m]ild spinal stenosis and disc bulging with facet arthritis at L2–3."

- **April 2019:** Hayes reported continuing chronic pain left knee.

- **August 2019:** Hayes underwent a total left-knee arthroplasty.

- **November 2019:** Dr. Crome again saw Hayes to address continued low back pain. He reported some success with the tramadol Dr. Crome had prescribed him.

- **September 2020:** Hayes reported daily back pain to Dr. Crome but again stated prescription medication was helping.

- **March 2021:** Hayes checked in with Dr. Crome regarding back pain, among other issues. Prescription medication continued to provide some relief.

When Hayes began his position at Ridgecrest, he did not disclose to his employer the twenty-pound lifting restriction his doctor had placed on him. He reported only a "little back pain" and denied previous operations, back injuries, or other injuries. The dishwashing position regularly required Hayes to lift loads of twenty-five pounds and sometimes required him to lift as much as fifty pounds. While lifting these weights, Hayes would often be required to engage in "stooping, kneeling, crouching and/or crawling."

On September 12, 2021, Hayes tripped over "a piece of metal coming out of the ground" while pushing a wheelbarrow-type cart at his job. He fell to the cement and hit his head. A coworker was with Hayes at that time, and Hayes reported that he "jumped right up" before the coworker could assist him. He completed an accident report noting that he had injured his low back, leg, and right ankle. Just over a week later Hayes visited Dr. Kinker for back pain that had started the day before, which he believed was due to his fall the previous week. Dr. Kinker diagnosed him with " right-sided sciatic nerve distribution radicular pain." Hayes then visited an occupational medical clinic several days later, reporting constant shooting pain. A physician's assistant at the clinic diagnosed Hayes with "lumbago with sciatica on the right side and sprained ligaments of the lumbar spine."

Hayes returned to work in October on light-duty status. That same month he received a second CT scan, which revealed "grade 2 anterolisthesis of L4 on L5 with severe loss of disc height at L4-L5, vacuum disc phenomenon, and multilevel vertebral body osteophyte formation." The ordering physician noted that these results mirrored those of his 2019 CT scan.

In November Hayes saw Dr. Dolphin, who Ridgecrest had directed him to visit. Hayes reported a history of low-back issues and lumbar surgery in 1999. Dr. Dolphin recommended a CT scan and placed Hayes on a ten-pound lifting restriction.

In December, the CT scan was completed and revealed "severe degenerative disc disease at L4-L5 with Grade I spondylolisthesis." The reviewing physician observed: "There is severe central stenosis at L3-L4. There is severe central stenosis at L4-L5 with large disc herniation at L4-L5 and what appears to be significant bilateral foraminal narrowing at L4-5 secondary to disc protrusion." Dr. Dolphin recommended surgery as soon as authorized by insurance.

CRH recommended Dr. Igram complete an independent medical evaluation to determine the necessity of surgery. Dr. Igram concluded that Hayes had

> chronic low back pain [which] likely strained or aggravated his back during the September, 2021 work injury. He already does not require further treatment for the back strain but may need further treatment for chronic low back pain which would be unrelated to the work injury. Proposed surgery would not be related to the back strain which occurred at work in September, 2021.
> . . . .
> It is pretty clear from records that we have in our possession that he does have a chronic back problem. The injury of September 12 did not cause the spondylolisthesis and appears to have not increased his deformity, at least based on the available imaging studies. The underlying stenosis was also present prior to

the injury. These are clearly degenerative conditions which have been present for quite a long period of time.

. . . .

It is my opinion that he does not require additional medical care or for that matter surgical intervention for the above-noted conditions.

. . . .

Since I am of the opinion that this was a back strain, I would suspect that Mr. Hayes is at maximal medical improvement [(MMI)] from this injury. I would indicate that he is at MMI as of today with no ratable impairment as a result of that injury.

However, Dr. Dolphin continued to recommend surgery. Hayes's counsel requested that CRH authorize Hayes's surgery in April 2022. CRH's counsel responded that further investigation was required for them to authorize payment for the surgery. Hayes saw Dr. Dolphin again in June, and Dr. Dolphin again recommended surgery. Hayes underwent the surgery in September.

Hayes petitioned the Iowa Workers' Compensation Commissioner for benefits in April 2022 based on his September 2021 fall. An arbitration hearing was held before the deputy commissioner in May 2023. The deputy found Hayes failed to establish that he sustained any permanent disability as a result of the September 12, 2021 work injury, and the deputy concluded all other issues raised were moot given Hayes's failure to prove causation and compensability.

Hayes filed his intra-agency appeal in December 2023. On de novo review, the commissioner affirmed the deputy's arbitration decision. Hayes then petitioned for judicial review in May 2024. The district court affirmed the commissioner's ruling in its entirety.

Hayes now appeals.

## II.      Error Preservation

Hayes contests the commissioner's determination that he did not suffer a permanent disability causally related to his work injury.   The first argument he makes in support of that issue is a claim that the deputy commissioner committed legal error in disclaiming the opinions of Dr. Dolphin, the physician selected by CRH to treat Hayes.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).  In administrative law cases, "a party preserves error on an issue before an agency if a party raises the issue in the agency proceeding before the agency issues a final decision and both sides have had an opportunity to address the issue." *Staff Mgmt. v. Jimenez*, 839 N.W.2d 640, 647 (Iowa 2013).  The final decision in a workers' compensation case is made by the commissioner rather than the deputy commissioner.  *Id.*; *see also* Iowa Code § 10A.321(5) (2024) ("The decision of the workers' compensation commissioner is [the] final agency action.").  But even where an issue has been properly raised and argued before the agency, that issue is not preserved for our review if the "agency fails to address [the] issue in its ruling," and the aggrieved party fails to move for rehearing pursuant to Iowa Code section 17A.16(2).  *KFC Corp. v. Iowa Dep't of Revenue*, 792 N.W.2d 308, 329 (Iowa 2010).

Both parties agree that Hayes argued before the agency and district court that "[CRH]'s actions in ignoring the recommendations of [Dr. Dolphin,] its selected, authorized treating physician[,] was a violation of Iowa law."  And both parties also agree that the agency did not address that argument in its ruling.

Hayes additionally failed to move for rehearing. Hayes argues he was not required to move for rehearing because Iowa Code section 17A.16(2) provides that "any party *may* file an application for rehearing" following "the issuance of any final decision by the agency." True, absent a reason to do so, parties are not required to move for rehearing after final agency rulings. *See* Iowa Code § 17A.16(2). But just as a party is not *required* to move to reconsider following a final district court order, *see* Iowa R. Civ. P. 1.904(2) ("[T]he [court's] findings and conclusions *may* be reconsidered." (emphasis added)), that party must do so if they wish to preserve error on appellate review over an issue that was not ruled upon by the district court, *see Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 883–84 (Iowa 2014).

Similarly, Hayes was only obligated to move for rehearing if he wished to preserve the specific argument he now attempts to raise before us. His argument that he could not have anticipated the commissioner's failure to rule on the issue is not a compelling justification for a lack of error preservation when he still had the opportunity to move for rehearing following the commissioner's final ruling. "[W]e decline to entertain issues not ruled upon by an agency when the aggrieved party failed to follow available procedures to alert the agency of the issue." *KFC*, 792 N.W.2d at 329.

And Hayes's argument that *KFC* is not controlling law "because Iowa Department of Revenue decisions have no relevance on Workers' Compensation [cases] or the case at hand" is incorrect. The *KFC* court indicated motions for rehearing are required to preserve error for all administrative agency rulings that fail to address a contested issue, not *only* the rulings of the Iowa Department of Revenue. *See id.* ("When *an agency* fails to address an issue in its ruling and a

party fails to point out the issue in a motion for rehearing, we find that error on these issues has not been preserved." (emphasis added)). Further, both the supreme court and our court have favorably cited *KFC* in support of that rule as it relates to review of other agencies' actions. *See, e.g.*, *Klein v. Iowa Pub. Info. Bd.*, 968 N.W.2d 220, 235 (Iowa 2021) (applying *KFC* error-preservation rule to appeal of an Iowa Public Information Board decision); *Linnhaven, Inc. v. Blasdell*, No. 24-0333, 2024 WL 4619670, at *4 (Iowa Ct. App. Oct. 30, 2024) (applying *KFC* error-preservation rule to appeal of Workers' Compensation Commissioner decision); *Archer Daniels Midland v. Williams*, 3 N.W.3d 231, 236–37 (Iowa Ct. App. 2023) (applying *KFC* error-preservation rule to appeal of Workers' Compensation Commissioner decision). So, Hayes has not preserved his argument that the deputy commissioner committed legal error in disclaiming the opinions of Dr. Dolphin.

## III.    Standard of Review

The Iowa Administrative Procedure Act, Iowa Code chapter 17A, governs judicial review of workers' compensation cases. Iowa Code § 10A.322. If the claim of error lies with the agency's findings of fact, we ask whether substantial evidence supports those findings of fact. *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006). We are bound by the commissioner's factual findings as long as they are supported by substantial evidence in the record taken as a whole. *Id.* at 218.

Substantial evidence is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code

§ 17A.19(10)(f)(1).  "[T]he question on appeal is not whether the evidence supports a different finding than the finding made by the commissioner, but whether the evidence supports the findings actually made."  *Meyer*, 710 N.W.2d at 218 (cleaned up).

If "the claim of error lies with the agency's interpretation of the law, the question on review is whether the agency's interpretation was erroneous, and we may substitute our interpretation for the agency's."  *Id.* at 219.  And if "the claim of error lies with the ultimate conclusion reached [by the agency], then the challenge is to the agency's application of the law to the facts."  *Id.* (emphasis omitted).  The question on judicial review then becomes "whether the agency abused its discretion by, for example, employing wholly irrational reasoning or ignoring important and relevant evidence."  *Id.*  "An agency's application of the law to the facts can only be reversed if we determine such an application was 'irrational, illogical, or wholly unjustifiable.'"  *Mycogen Seeds v. Sands*, 686 N.W. 2d 457, 465 (Iowa 2004) (quoting Iowa Code § 17A.19(10)(m)).

## IV.    Discussion

Hayes posits that the deputy commissioner's reliance on Dr. Igram's medical opinions was not supported by substantial evidence and resulted in a decision that was irrational, illogical, or wholly unjustifiable.[1]

Hayes primarily takes issue with the deputy's assertions that "[Dr. Igram] compared both pre- and post-injury CTs which showed no structural difference.

---

[1] We engage in a substantial evidence analysis because Hayes's claim that the decision was irrational, illogical, or wholly unjustifiable, is based on his unpreserved argument that the deputy commissioner committed legal error in disclaiming the opinions of Dr. Dolphin.

The large disk herniation at L4-L5 was present on both pre- and post-September 12, 2021, CT scans. It was the disc herniation that necessitated the surgery." Hayes contends that Dr. Igram's April 2022 report contained no such mention of any large disc herniation, that Dr. Igram did not reference any large disc herniation until April 2023, and that the deputy's analysis, which was based on Dr. Igram's medical opinions, was "founded in what amounts to revisionist history." We will not determine what weight the deputy commissioner should have attributed to each medical expert because our duty on appeal is not to re-weigh the evidence. Rather, we must determine if the substantial evidence supports the findings the deputy commissioner actually made. *See Meyer*, 710 N.W.2d at 218.

Hayes's primary argument on this issue is inaccurate and represents, at best, a dispute over semantics. While Hayes's March 2019 CT scan report did not specifically use the term "large disc herniation," the report cited "a large broad-based disc bulge" at L4-5. Dr. Igram had reviewed both that scan report and imaging, as well Hayes's 2021 post-work-injury scan report and imaging at the time he offered his April 2022 report. In that report, he stated that there was "no major change from CT in 2019 to 2021" post-work injury, "further treatment for low back pain . . . would be unrelated to the work injury," and that Hayes had "no ratable impairment as a result of [the work] injury" at the time of the report. And in response to an April 2023 letter received from CRH's counsel, Dr. Igram agreed that the September 2021 work injury did not change Hayes's underlying condition and that the "large disc herniation at L4-5" was present on the 2019 CT scan he viewed. Any argument claiming that Dr. Igram was unaware of a large disc herniation present in the 2019 imaging would rely on the assumption that Dr. Igram

did not actually view Hayes's CT scan and medical record as he claimed to have done. We see no evidence that such is the case.

And we agree that the other evidence cited by the deputy commissioner supports her reliance on Dr. Igram's medical opinion. The deputy commissioner clarified that Dr. Igram "reviewed past medical records and performed his own examination." She further stated that

> Dr. Igram noted [Hayes] had degenerative findings but no major changes from 2019 to 2021. Dr. Igram diagnosed [Hayes] with chronic low back pain with underlying spinal stenosis. [Hayes]'s degenerative spondylolisthesis at L4-L5 had been present at least since 2019 based on imaging, if not longer. The injury of September 12, 2021, did not cause the spondylolisthesis nor did it increase his deformity. The underlying stenosis was also present prior to the injury. The mechanism of injury likely was a back strain which was temporary in nature. It was the opinion of Dr. Igram that [Hayes] did not need additional treatment arising from the back strain caused by the September 12, 2021, injury.

(Internal citations omitted.)

The deputy commissioner further explained why she relied more heavily on Dr. Igram's opinions than those of Dr. Dolphin, stating his "opinions are given lower weight as he did not show he was aware of [Hayes]'s past medical history and adopted the history provided to him by [Hayes]'s counsel." Because the deputy commissioner's findings in favor of Dr. Igram's medical opinions are supported by substantial evidence, we affirm the district court's decision affirming the commissioner's arbitration decision. Hayes's other issues are thus moot.

**AFFIRMED.**