# IN THE COURT OF APPEALS OF IOWA

No. 24-2040
Filed October 29, 2025

ANTHONY CULPEPPER,
   Plaintiff-Appellee,

vs.

CNH INDUSTRIAL AMERICA, LLC and ACE AMERICAN INSURANCE CO.,
   Defendant-Appellants.
_____

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

An employer and its insurance carrier appeal the district court order reversing the workers' compensation commissioner's denial of an employee's claims for benefits. **AFFIRMED.**

Timothy Wegman of Peddicord Lillis, LLP, West Des Moines, for appellants.

Nicholas G. Pothitakis of Pothitakis Law Firm, P.C., Burlington, for appellee.

Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

CNH Industrial America, LLC (CNH) and Ace American Insurance Co.[1] appeal the district court order reversing the workers' compensation commissioner's denial of Anthony Culpepper's claim for benefits. They contend substantial evidence supports the commissioner's findings that Culpepper failed to show he sustained and gave timely notice of a compensable injury. Because we reach the same conclusions as the district court, we affirm its judicial review ruling.

**I. Background Facts and Proceedings.**

In 2004, Culpepper began working for CNH, which produces tractors and other heavy machinery. He started on the production line, installing motor valves in heavy machinery. After herniating a disc while working in 2007, Culpepper was moved to a material specialist position. Although Culpepper used a forklift to perform most of his duties, the job required frequent bending, twisting, and flexing of his neck.

Around 2017 or 2018, CNH reassigned Culpepper to work as a quality specialist. In this position, Culpepper climbed on top of, inside of, and under the machinery to ensure its quality. The work involved moving his head from side to side, crouching, crawling, and manipulating objects with his hands and fingers.

Before Culpepper's last job reassignment, he had experienced pain in his lower back, shoulders, and arms. After he became a quality specialist, Culpepper began experiencing pain that originated in his neck. He described this as tingling numbness and pain that began on the left side of his neck and radiated down to

---

[1] We refer to CNH and Ace American Insurance Co. collectively as the defendants.

his wrist. Culpepper claims that the pain became steady but remained manageable for one or two years before becoming intolerable in May or June 2021. Culpepper claims that he reported work-related tingling and numbness in his arm to CNH's health services when it became intolerable, although he could not recall the exact date of his report. According to Culpepper, CNH provided palliative care like heat and ice before returning him to work.

In June 2021, Culpepper reported his symptoms to his physician. That September, CNH referred Culpepper to a doctor who administered a cervical epidural steroid injection for cervical and left arm radicular pain. Three weeks later, another CNH doctor referred Culpepper to Dr. Abernathey, a neurosurgeon. After reviewing Culpepper's MRI, Dr. Abernathey found modest degenerative changes at multiple levels of the spine. But he also found lateral disc extrusion at Culpepper's C6-7 disc, which Dr. Abernathey recommended treating surgically with an anterior cervical discectomy and fusion.[2]

Culpepper petitioned for workers' compensation benefits in February 2022. For injury dates, Culpepper alleged "06/08/21, approximate; 09/03/21; 10/29/21 (cumulative)." After an arbitration hearing, the deputy worker's compensation commissioner found that Culpeper failed to show the disc extrusion was related to his work activities. The deputy concluded that Culpepper's condition was the result of the natural breakdown of his cervical spine due to a preexisting degenerative condition. In the alternative, the deputy held that even if Culpepper's injury was

---

[2] Culpepper wanted to have surgery only if it was covered by workers' compensation insurance. Culpepper lost his health insurance coverage in May 2022 when he and other workers went on strike.

related to his work activities, his failure to provide CNH with notice of his injury bars recovery. Culpepper appealed to the worker's compensation commissioner, who affirmed the deputy's decision.

Culpepper petitioned the district court for judicial review. The district court found the agency failed to address highly relevant and uncontroverted expert opinion evidence from Dr. Abernathey. As a result, it concluded the agency's actions were "unreasonable, arbitrary, capricious, an abuse of discretion, and the product of illogical reasoning." The court also found the agency "relied on a patent misinterpretation" of other evidence provided by Dr. Abernathey. On this basis, the court granted Culpepper's petition, reversed the agency's findings, and remanded to the agency for a new order consistent with its ruling. The defendants appeal.

## II. Scope and Standard of Review.

Our review of agency decisions is governed by Iowa Code section 17A.19 (2024). "We apply the standards set forth in Iowa Code chapter 17A in our judicial review of agency decision-making to determine whether our conclusion is the same as the district court." *Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 242 (Iowa 2018). The district court may properly grant relief if agency action prejudiced the substantial rights of the petitioner and that action falls under one of the criteria of section 17A.19(10). *Id.* If we reach the same conclusion as the district court, we affirm. *Id.*

Whether an employee sustained an injury arising out of and in the course of their employment is fact question vested in the discretion of the worker's compensation commissioner. *Bridgestone Americas, Inc. v. Anderson*, 4 N.W.3d

676, 681 (Iowa 2024). We affirm the agency's findings if supported by substantial evidence. *Id.* We are not concerned about whether the evidence could support a different conclusion. *Id.* The question is whether substantial evidence supports the findings made by the agency when the record is viewed as a whole. *Id.*

### III. Causation.

The defendants first challenge the district court's reversal of the agency's causation finding. The district court determined that the record does not support the agency's finding that Culpepper's condition is the result of a preexisting degenerative condition and unrelated to his work activities. The court found the deputy commissioner misconstrued Dr. Abernathey's statements about the cause of Culpepper's condition and ignored Dr. Abernathey's stated medical opinion on his work activity aggravating his cervical spine, resulting in the need for surgery.

The record shows that Dr. Abernathey provided statements about Culpepper's injury in November 2021, January 2022, and March 2022. The deputy commissioner discusses the November 2021 and March 2022 statements in the arbitration decision but notably omits any discussion of the January 2022 statement, in which Dr. Abernathey opined "within a reasonable degree of medical certainty that [Culpepper]'s work activities . . . as part of his job as a quality specialist resulted in an aggravation to his cervical spine necessitating his need for surgery." The defendants suggest that the March 2022 statements reflect a change in Dr. Abernathey's opinion from January 2022, justifying its exclusion. In the alternative, the defendants argue that the statements are in conflict and thus it is for the agency to decide which statements to credit.

In March 2022, Dr. Abernathey agreed with three statements:

- He is unaware of any "specific" work activity or work incident that would have caused injury to Culpepper's cervical spine.
- Diagnostic studies of Culpepper's cervical spine "clearly show long-standing degenerative changes that would have long pre-dated June of 2021."
- It is his medical opinion that Culpepper's need for the cervical fusion surgery: (1) "is more likely than not" "related" to his long-standing degenerative condition, (2) would have been inevitable, and (3) is not caused by a work injury from 2021.

These statements are not irreconcilable with Dr. Abernathey's opinion that Culpepper's work activity aggravated his condition such that he needs surgery. First, Culpepper's condition was aggravated by years of ongoing work activities rather than a discrete injury that occurred in 2021 or earlier. The statements reconcile when "specific" is read as "discrete." Second, there is no dispute that Culpepper has a degenerative condition that existed before June 2021. Despite its existence, the record shows that Culpepper's cervical spine was asymptomatic before his reassignment to a quality specialist position.[3] Finally, Dr. Abernathey's opinion that Culpepper's need for surgery is "related" to his degenerative condition[4] or would have been inevitable does not contradict his opinion that the need for

---

[3] The defendants cite Dr. Abernathey's notes on Culpepper's medical history, which states that Culpepper "experienced cervical, thoracic, and lumbar pain for many years dating back to 2007." This history is only inconsistent if interpreted to mean that Culpepper has experienced each category of pain since 2007. But as summarized in the deputy commissioner's arbitration decision, Culpepper's medical records show he only reported thoracic, lumbar, and arm pain before 2021. Although Culpepper experienced cervical pain as early as 2017 or 2018, he believed it was not a serious problem and that he could work through it.

[4] The deputy summarized Dr. Abernathey's statement as finding "it was more likely than not that the need for cervical fusion surgery being proposed would have been related to [Culpepper]'s long-standing degenerative condition *rather than any work injury*." (Emphasis added.) The emphasized text is neither included in Dr. Abernathey's signed statement, nor is it a necessary inference. Considering that this inference directly contradicts the opinion Dr. Abernathey provided just two months earlier, which he never disavowed, it is illogical to infer that Dr. Abernathey found Culpepper's condition is unrelated to work activity.

surgery results from work activity that aggravated that condition. *See McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 191–92 (Iowa 1980) ("[T]he fact that the normal aging process may produce the ailment from which a claimant suffers as an actual result from his employment experience does not operate to bar a finding of disability.").

The rule in Iowa is that an employee is entitled to full compensation when workplace activity aggravates a preexisting condition that did not previously cause a degree of disability. *Floyd v. Quaker Oats*, 646 N.W.2d 105, 110 (Iowa 2002); *accord Rose v. John Deere Ottumwa Works*, 76 N.W.2d 756, 761 (Iowa 1956) ("If plaintiff was diseased and his condition was aggravated, accelerated, worsened or 'lighted up' by the injury so it resulted in the disability found to exist plaintiff was entitled to recover."). As noted above, the undisputed evidence shows that Culpepper was asymptomatic of cervical pain before he began working as a quality specialist. Thus, viewing the entire record before the agency, we agree with the district court's conclusion that the agency's causation finding is not supported by substantial evidence.

**IV. Notice.**

We turn then to the defendants' notice claim. As an alternative ground for denying Culpepper's claim for benefits, the deputy found that Culpepper failed to provide CNH with notice of his injury within ninety days of the date of the occurrence as required by Iowa Code section 85.23 (2021):

> Problematically, claimant did not provide a date upon which he reported his injury to his employer. On June 8, 2021, claimant sought treatment for neck pain but he related that the pain had been ongoing one or two years. He testified that he reported this pain previous to June 8, 2021, but no action was taken. However, he also

testified that his reports of pain to the health staff with defendant employer led him to an appointment with Dr. Milani that took place in September. There is no explanation in the record as to why the medical staff acted differently to the pre-June 8, 2021, pain complaints. There is no evidence of actual notice nor imputed notice. The lack of notice would prevent recovery in this case even if liability was established.

Iowa Code section 85.23 requires that employees give notice of an injury to an employer within ninety days of the date they knew or should have known that the injury was work-related. Failure to do so bars recovery. Iowa Code § 85.23. Legislative amendments enacted in 2017 clarified this requirement, *see* 2017 Iowa Acts ch. 23, § 3, codifying the manifestation test previously adopted in cumulative injury cases, *see Meyer v. IBP, Inc*., 710 N.W.2d 213, 221 (Iowa 2006) ("'Manifestation' is best characterized as 'the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person.'" (citation omitted)). *See also generally Tweeten v. Tweeten*, 999 N.W.2d 270, 279–82 (Iowa 2023) (discussing the legislative amendment of section 85.26, which added identical language for purposes of computing the statute of limitations). Because repetitive-trauma injuries or cumulative injuries develop over time, it can be difficult to identify an injury date. *Tweeten*, 999 N.W.2d at 279. Factors in determining when the injury manifests itself include "absence from work because of inability to perform, the point at which medical care is received, or others, none of which is necessarily dispositive." *Meyer*, 710 N.W.2d at 221 (citation omitted).

Because lack of notice is an affirmative defense, the burden of proof is on the defendants to show Culpepper failed to provide timely notice of his injury. *See PMX Indus. v. Reich*, No. 12-1824, 2013 WL 2371191, at *10 (Iowa Ct. App.

May 30, 2013). The district court concluded that the deputy erred by requiring Culpepper to provide a precise date of injury to prove notice. Culpepper testified that he informed and sought treatment from CNH's health services for tingling that began in his neck and radiated down his arm before seeing his personal physician in June 2021. As a result, CNH sent Culpepper to see an occupational doctor in August and September 2021. The defendants failed to present any evidence rebutting this testimony.

We agree that the agency erred by placing the burden on Culpepper to show he provided notice of his injury rather than requiring the defendants to prove lack of notice as an affirmative defense. Based on the record before the agency, Culpepper knew or should have known that he had a work-related injury by June 2021. Culpepper's testimony that he sought treatment for his pain from health services before June 2021 is undisputed. Even discounting Culpepper's testimony, CNH knew of Culpepper's condition when it referred him for medical treatment. His first appointment with an occupational doctor was in August 2021, which falls within the ninety-day window set by section 85.23.

**V. Conclusion.**

Because we reach the same conclusions as the district court, we affirm.

**AFFIRMED.**